PEOPLE v PETERS

Docket No. 99830. Argued May 3, 1995 (Calendar No. 16). Decided
    August 10, 1995.

Louis Peters pleaded nolo contendere in the Detroit Recorder's
    Court, Michael Talbot, J., to four counts of burning dwelling
    houses, two counts of burning real property, four counts of
    burning insured property, and one count of conspiracy to burn
    insured property. The defendant was sentenced to three years'
    probation and to pay a fine and restitution. The defendant
    appealed the restitution order, but died during the pendency of
    his appeal. Thereafter, the Court of Appeals, BRENNAN, P.J.,
    and GILLIS and GRIBBS, JJ., in an unpublished order, remanded
    the case for dismissal ab initio (Docket No. 136343). The Court
    of Appeals denied the prosecutor's motion for rehearing, and
    the Supreme Court denied leave to appeal, 439 Mich 893 (1991).
    On remand, the court, Richard L. Cunningham, J., abated the
    criminal conviction and fine, but held that the order of restitu-
    tion survived the abatement of the criminal case. After re-
    mand, the Court of Appeals, MICHAEL J. KELLY, P.J., and
    SHEPHERD and MURPHY, JJ., reversed, holding that an order of
    restitution must be vacated when a defendant's criminal con-
    viction is abated ab initio because of the defendant's death
    (Docket No. 149161). The people appeal.

    In an opinion by Justice WEAVER, joined by Chief Justice
    BRICKLEY, and Justices BOYLE, RILEY, and MALLETT, the Su-
    preme Court·held:

    Where a convicted defendant dies pending appeal, the appeal
    should be dismissed, absent collateral consequences, and. the
    underlying conviction and accompanying compensatory sen-
    tencing. sanctions should stand. Purely penal sanctions should
    be abated ab initio because they no longer continue to serve a
    purpose.

    1. In Michigan, a criminal conviction destroys the presump-
    tion of innocence regardless of an appeal of right. No state
    interest under the facts of this case can be served by allowing
    an appeal to proceed when the defendant is not available for
    trial. It is better to allow the litigation to end and the presump-
    tively valid conviction to stand.

    2. Typically, two purposes are identified for sanctions associ-

ated with a criminal conviction: penal and compensatory. The majority of jurisdictions abate or dismiss sanctions that are primarily penal. However, consistent with the Crime Victim's Rights Act, MCL 780.751 *et seq.*; MSA 28.1287(751) *et seq.,* and Const 1963, art 1, § 24, where the intent is to compensate the victim, a fine or order may survive the death of the offender.

3. In this case, although the order of restitution would cause financial pain, financial pain does not automatically render the order primarily penal. The logic that supports dismissal of the appeal also supports enforcing the order of restitution.

Reversed and remanded.

Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that because the defendant died during the pendency of his appeal of right, the entire criminal cause, including the restitution order stemming from the conviction, should be abated.

The rule of abatement ab initio should be applied to abate the entire criminal cause, i.e., the appeal and the conviction, in cases in which the defendant dies pending resolution of an appeal of right. In cases in which the defendant dies pending a discretionary appeal, the appeal should be dismissed as moot, and the conviction and its collateral consequences should stand. The interest of justice requires deference to a criminal defendant's constitutional right to an appeal when the defendant dies during the pendency of an appeal of right. When the issues are compensation stemming from a conviction versus a final adjudication of a defendant's guilt or innocence, notions of fundamental fairness demand giving priority to the latter.

205 Mich App 312; 517 NW2d 773 (1994) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Janet A. Napp,* Assistant Prosecuting Attorney, for the people.

*Elizabeth L. Jacobs* for the defendant.

WEAVER, J. We granted leave to consider whether an order of restitution should abate where a convicted criminal defendant died pending

appeal of his conviction.[1] To decide this issue it is necessary to clarify our position on the rule of abatement ab initio.

In *People v Elauim,* we applied the rule of abatement ab initio to dismiss an appeal from a criminal conviction and erase the criminal conviction and accompanying penal sanctions where a defendant died pending appeal.[2] We continue to believe that it is appropriate to dismiss an appeal upon the death of a convicted criminal defendant, but are not persuaded that abatement ab initio, when applied to compensatory sanctions, is consistent with Michigan law since the 1985 enactment of the Michigan Crime Victim's Rights Act, MCL 780.751 *et seq.*; MSA 28.1287(751) *et seq.,* and the 1988 amendment of art 1, § 24 of the Michigan Constitution. Instead, we hold that where a convicted defendant dies pending appeal, the appeal should be dismissed, absent collateral consequences not presented here, and the underlying conviction and accompanying compensatory sentencing sanctions should stand. Purely penal sanctions, however, should be abated ab initio because they no longer continue to serve a purpose.

I

On September 20, 1990, defendant Louis Peters entered a plea of no contest to four counts of burning dwelling houses, MCL 750.72; MSA 28.267; two counts of burning real property, MCL 750.73; MSA 28.268; four counts of burning insured property, MCL 750.75; MSA 28.270; and one count of conspiracy to burn insured property, MCL 750.157a; MSA 28.354(1) and MCL 750.75; MSA 28.270. At sentencing, defendant was ordered to

[1] 448 Mich 851 (1995).
[2] 393 Mich 601; 227 NW2d 553 (1975).

serve three years' probation, to pay a criminal fine of $10,000, and to pay $400,000 in restitution.[3] The restitution was to be divided between the victims, the City of Detroit ($140,000) and Michigan Basic Property Insurance Association ($260,000).[4] Because defendant was suffering from terminal lung cancer, he was not ordered to serve time in jail.

Defendant appealed the amount of the restitution order.[5] However, during the pendency of his appeal, defendant died. On notification of defendant's death, the Court of Appeals remanded the case for entry of an order dismissing the case ab initio.[6] The Court of Appeals denied the prosecutor's motion for rehearing, and we denied the prosecution's leave to appeal the denial of rehearing at that time.[7] On remand, the trial court abated the criminal conviction and $10,000 fine, but held that the $400,000 order of restitution survived the abatement ab initio of the criminal case. The trial court relied on art 1, § 24 of the Michigan Constitution, which guarantees a crime victim's right to restitution, and the reasoning of *United States v Dudley*, 739 F2d 175 (CA 4, 1984).[8]

Defendant, by his attorney, appealed the trial

---

[3] Defendant was also ordered confined to his home for the first year of probation, to pay for the associated costs of that confinement, and not to practice real estate during his probation.

[4] The City of Detroit estimated that it had expended approximately $179,106.24 fighting the fires that were the subject of defendant's convictions. Michigan Basic testified that of ninety homes owned by defendant that had burned, twenty-five were listed as resulting from arson. Michigan Basic had paid $277,000 in proceeds for those twenty-five homes.

[5] Defendant also alleged that the plea was improperly induced and involuntary, that defendant was not informed of the consequences of his plea, and that he was denied effective assistance of counsel.

[6] Unpublished order, entered July 16, 1991 (Docket No. 136343).

[7] 439 Mich 893 (1991). Justices BRICKLEY, BOYLE, and RILEY would have granted leave.

[8] The United States Court of Appeals for the Fourth Circuit held that the death of a defendant pending appeal required that the purely penal sanctions abate, but an order of restitution survived.

court's ruling regarding the order of restitution. The Court of Appeals reversed, holding that an order of restitution must be vacated when a defendant's criminal conviction is abated ab initio because of defendant's death.[9] The prosecution appealed the abatement of the order of restitution.[10] We reverse and reinstate the order of restitution.

II

There is no federal constitutional right to an appeal.[11] However, the perception of appeal as the opportunity to finally determine a convicted defendant's guilt or innocence is one source of the rule of abatement ab initio. Despite this perception, it is well established in the federal system that, once convicted, a criminal defendant is no longer presumed innocent.[12] Art 1, § 20 of the Michigan Constitution does provide for an appeal of right from a criminal conviction. Even given this appeal of right, a criminal conviction in Michigan also destroys the presumption of innocence.[13] A convicted criminal defendant must prove error requiring reversal.[14] It is also interesting to note that the appeal of right has recently been limited.[15] Although the recent constitutional amendment does

---

[9] 205 Mich App 312; 517 NW2d 773 (1994).

[10] We denied defendant's cross appeal regarding the voluntariness of his plea by order dated January 4, 1995. 448 Mich 851.

[11] *Ross v Moffit,* 417 US 600, 611; 94 S Ct 2437; 41 L Ed 2d 341 (1974).

[12] *Herrera v Collins,* 506 US 390; 113 S Ct 853; 122 L Ed 2d 203 (1993).

[13] *People v Rowell,* 14 Mich App 190; 165 NW2d 423 (1968); *People v Tate,* 134 Mich App 682; 325 NW2d 297 (1984).

[14] *Rowell,* n 13 *supra.*

[15] The appeal of right no longer applies to guilty pleas and pleas of nolo contendere. Const 1963, art 1, § 20 as amended December 24, 1994. On April 1, 1995, this Court amended Michigan Court Rule 7.203 to exclude convictions in criminal cases based on a guilty plea or a plea of nolo contendere from appeals of right.

not apply in this case, we find that the appeal of right was personal to the defendant and, therefore, died with him.[16]

In literal application, abatement ab initio erases a criminal conviction from the beginning on the theory that all injuries resulting from the crime " 'are buried with the offender.' "[17] The reasoning behind abatement ab initio varies among jurisdictions ascribing to the rule.[18] Some jurisdictions distinguish between appeals of right and discretionary review when applying the rule. Those jurisdictions that have rejected the rule of abatement ab initio may dismiss the appeal,[19] abate the appeal,[20] allow the appeal to proceed notwithstanding the defendant's death,[21] or substitute a personal representative for the defendant.[22]

This Court's treatment of appeals from criminal convictions on the defendant's death has varied. In *People v Elauim,* 393 Mich 601; 227 NW2d 553 (1975), this Court abated ab initio the indictment of a defendant who died pending his appeal from a conviction for first-degree murder. The *Elauim* Court relied on the reasoning of the United States Supreme Court in *Durham v United States,* 401

[16] Other jurisdictions allow a substitute to pursue the defendant's appeal. See, e.g., *State v Makaila,* 79 Hawaii 40; 897 P2d 967 (1995). However, we see no reason to allow a substitute to pursue the appeal or to upset a presumptively valid conviction.

[17] *United States v Oberlin,* 718 F2d 894, 896 (CA 9, 1983), quoting *United States v Dunne,* 173 F 254, 258 (CA 9, 1908).

[18] See, e.g., *Hartwell v Alaska,* 423 P2d 282 (Alas, 1967) (abatement from the beginning because the presumption of innocence stands until the conclusion of an appeal); *Arizona v Griffin,* 121 Ariz 538; 592 P2d 372 (1979) (conviction abates from the beginning because society's interest in protection has been satisfied and punishment is impossible); *Maine v Carter,* 299 A2d 891 (Me, 1973) (conviction abates because it is moot and for the lack of an indispensable party).

[19] *Whitehouse v Indiana,* 266 Ind 527; 364 NE2d 1015 (1977).

[20] *Vargas v Texas,* 659 SW2d 422 (Tex Crim App, 1983).

[21] *State v McDonald,* 144 Wis 2d 531; 424 NW2d 411 (1988).

[22] *Ohio v McGettrick,* 31 Ohio St 3d 138; 509 NE2d 378 (1987).

US 481; 91 S Ct 858; 28 L Ed 2d 200 (1971). In *Durham,* a criminal defendant's indictment was abated following his death.[23] However, in other cases this Court has dismissed appeals from criminal convictions that were interrupted by the death of the defendant, apparently allowing the convictions to remain intact.[24]

We take this opportunity to clarify our position on abatement ab initio. Where a defendant dies pending an appeal of a criminal conviction, we hold that the appeal should be dismissed, but the conviction retained. The conviction of a criminal defendant destroys the presumption of innocence regardless of the existence of an appeal of right. We therefore find that it is inappropriate to abate a criminal conviction.

Further, it is better policy to allow the litigation to end and the presumptively valid conviction to stand than it is to allow the convicted defendant's survivors to pursue litigation ad infinitum, in an effort to clear the deceased defendant's name. We

---

[23] The United States Supreme Court at least partially overruled *Durham* five years later when it dismissed a defendant's petition for certiorari upon his death in *Dove v United States,* 423 US 325; 96 S Ct 579; 46 L Ed 2d 531 (1976). The majority of federal courts has interpreted *Dove* as overruling *Durham* only to the extent that *Durham* would abate ab initio convictions where the defendant had no appeal of right. We are not bound by these decisions because no federal constitutional right is implicated.

Further, the *Durham* Court appeared to dismiss the distinction between appeals of right and discretionary appeals: "Since death will prevent any review on the merits, whether the situation is an appeal [of right] or certiorari [i.e., a discretionary appeal], the distinction between the two would not seem to be important for present purposes." 401 US 483, n *. See also *United States v Dwyer,* 855 F2d 144, 145-146 (CA 3, 1988) (Sloviter, J., concurring); *State v McDonald,* 138 Wis 2d 366, 370; 405 NW2d 771 (Ct App, 1987) (Sundby, J., concurring) (affirmed in part and reversed in part) 144 Wis 2d 531; 424 NW2d 411 (1988).

[24] *People v Gratopp,* unpublished order of the Supreme Court, entered January 28, 1991 (Docket No. 90262); *People v Weston,* unpublished order of the Supreme Court, entered June 8, 1989 (Docket No. 73131); *People v McCree,* 383 Mich 755 (1969); *People v Lester Smith,* 383 Mich 753 (1969).

agree with the rationale offered by the Indiana
Supreme Court:

> The presumption of innocence falls with a guilty
> verdict. At that point in time, although preserving
> all of the rights of the defendant to an appellate
> review, for good and sufficient reasons we presume
> the judgment to be valid, until the contrary is
> shown. To wipe out such a judgment, for any
> reason other than a showing of error, would ben-
> efit neither party to the litigation and appears to
> us likely to produce undesirable results in the area
> of survivor's rights in more instances that it would
> avert an injustice.[25]

Finally, we see no state interest, under the facts
presented in this case, that can be served by
allowing an appeal to proceed when the defendant
is not available for trial.[26]

### III

Given our decision to dismiss an appeal and
retain the conviction where a criminal defendant
dies with an appeal pending, we now consider the
status of fines, penalties, and orders that may
accompany a criminal conviction. The majority of
jurisdictions that have addressed this issue have
found that the resolution turns on the purpose the
fine, penalty, or order is to serve. Typically, juris-
dictions have identified two purposes for the sanc-
tions associated with a criminal conviction: penal
and compensatory.[27] The majority of jurisdictions
abate or dismiss sanctions that are primarily pe-

---

[25] See, e.g., *Whitehouse v Indiana,* n 19 *supra* at 529-530.

[26] *Haines v State,* 428 So 2d 590 (Miss, 1983).

[27] See, e.g., *United States v Dudley, supra; United States v Asset,*
990 F2d 208 (CA 5, 1993); *United States v Cloud,* 872 F2d 846 (CA 9,
1989).

nal.[28] However, where the intent behind a fine or order is to compensate the victim, the fine or order may survive the death of the offender.[29] Although the distinction between penal and compensatory is helpful, it is not always clear. Indeed, with almost any sanction, it is possible to identify both penal and compensatory purposes.

In this case, we address whether an order of restitution should abate on the death of defendant. Although defendant argued that the order was a penalty because it would force him to pay a large sum of money, the order was designed to compensate the City of Detroit Fire Department and Michigan Basic for their combined costs of approximately $456,000. Pursuant to stipulation by the parties, a substantial portion of those costs were to be recouped by the victims through restitution. However, the fact that defendant, now his estate, will experience some "financial pain" does not transform the restitution order into a primarily penal sanction. Erasing the order of restitution or even attempting to divine the portion of the order that the trial judge acknowledged he hoped would cause some "financial pain" is inconsistent with the Michigan Constitution and the Michigan Crime Victim's Rights Act. These laws authorized the payment of restitution, because the victims had suffered significant losses as a result of defendant's criminal conduct.

The Michigan Crime Victim's Rights Act was enacted in 1985 in response to growing recognition of the concerns of crime victims. The act codifies a crime victim's right to restitution, while leaving to the discretion of the sentencing judge the form the restitution will take:

---

[28] *Id.*

[29] *United States v Dudley, supra.*

[T]he court, when sentencing a defendant con-
victed of a crime, shall order, in addition to or in
lieu of any other penalty authorized by law or in
addition to any other penalty required by law, that
the defendant make full or partial restitution to
any victim of the defendant's course of conduct
that gives rise to the conviction, or to the victim's
estate.[30]

In 1988, after the enactment of the Crime Victim's
Rights Act, Michigan's Constitution was amended
to further enumerate the rights of crime victims.[31]
These laws underscore the rights of crime victims
and the compensatory nature of restitution in
Michigan.

At sentencing in this case, the Wayne County
Prosecutor's office, on behalf of the Detroit Fire
Department, and Michigan Basic, on its own be-
half, presented evidence of defendant's financial
victimization of them. The prosecutor requested
$179,106.24 to cover the costs incurred by the
Detroit Fire Department in extinguishing the fires
that were the subject of the defendant's no contest

---

[30] MCL 780.766(2); MSA 28.1287(766)(2).

[31] Art 1, § 24(1) states:

Crime victims, as defined by law, shall have the following
rights, as provided by law:

The right to be treated with fairness and respect for their
dignity and privacy throughout the criminal justice process.

The right to timely disposition of the case following arrest of
the accused.

The right to be reasonably protected from the accused
throughout the criminal justice process.

The right to notification of court proceedings.

The right to attend trial and all other court proceedings the
accused has the right to attend.

The right to confer with the prosecution.

The right to make a statement to the court at sentencing.

The right to restitution.

The right to information about the conviction, sentence,
imprisonment, and release of the accused.

plea. Michigan Basic reviewed a decade of records involving claims in which defendant was a named insured and discovered that it had paid defendant approximately $800,000 as a result of ninety fires. In twenty-five of those fires, involving payments of approximately $277,000, arson was suspected.[32] After some discussion off the record, the parties orally stipulated to and the trial court adopted a $400,000 restitution figure.[33]

On the basis of some language employed by the trial judge,[34] counsel for defendant argued on appeal that the restitution order was primarily penal. The Court of Appeals apparently agreed. We find that the Court of Appeals and defense coun-

[32] It showed restraint on the part of the trial judge to limit consideration of Michigan Basic's injuries to the twenty-five suspicious fires, given defendant's course of conduct.

[33] The parties' agreement included Michigan Basic's promise not to pursue federal RICO charges against defendant.

[34] As the parties prepared to negotiate a stipulated amount of restitution, the trial judge stated:

Here's what I want . . . . I'm not telling you that I've already drawn a bottom line in terms of sentence, but we know as an absolute fact that Mr. Peters has cancer. He's 67 years old, and he has lung cancer, and, quite frankly, the doctor says that not only would his sentence to prison be detrimental but that, unfortunately, only ten to 15 percent of the patients remain alive for three years. . . .

If any—even with that knowledge, do not think for a second that I'm not absolutely ripped up over the thought that someone who would be the instigator and cause of this kind of conduct shouldn't, even with the lung cancer, go to prison. Don't think for a moment that it isn't still in my mind, and I am really torn up about what to do here.

That said, if there were sufficient—and I don't like—pain, real pain, and part of that, I think, would be, in this case, financial pain, that's part of a—of a consideration . . . and identify assets to me that I can tie up, literally, so that I don't have to worry, and I mean like bank accounts. I mean real assets.

I don't want garbage, and as long as I'm satisfied that I know where those are and I can tie them up, I'm willing to talk, but I want pain, financial pain out of this. At least, maybe that will balance this equation out a little bit.

sel's narrow focus on a few comments made by the trial judge fails to account for the totality of the trial judge's considerations at sentencing. There is no doubt that an order of restitution would cause this defendant financial pain, but financial pain does not automatically render the order primarily penal.

The order of restitution was issued under the authority of the Michigan Constitution and the Crime Victim's Rights Act. Art 1, § 24 and the Crime Victim's Rights Act were intended to enable victims to be compensated fairly for their suffering at the hands of convicted offenders. It is clear that the Court of Appeals did not recognize that the trial court intended that the order of restitution defray the financial loss suffered by the victims, Michigan Basic, and the Detroit Fire Department. Once the amount of restitution was decided, the trial judge emphasized that the proration of the restitution between the victims was a matter for them to decide and not a concern for the court or defendant.

Counsel for defendant cross appealed the voluntariness of the plea, arguing that it would be improper to allow a challenged order of restitution to stand. The Court of Appeals did not address the voluntariness of the plea, and we denied leave to appeal that issue. However, the logic that supports dismissing the appeal also supports enforcing the order of restitution.

We reverse the decision of the Court of Appeals and remand the case to the trial court for an order consistent with this opinion.

BRICKLEY, C.J., and BOYLE, RILEY, and MALLETT, JJ., concurred with WEAVER, J.

CAVANAGH, J. I respectfully dissent. I would

uphold the rule of abatement ab initio, and apply it to abate the entire criminal cause (i.e., the conviction and any collateral consequences of the conviction) in cases in which the defendant dies pending resolution of his appeal. In other words, I would uphold our prior decision in *People v Elauim,* 393 Mich 601; 227 NW2d 553 (1975). However, I would take this opportunity to confine *Elauim's* application to cases in which the defendant dies pending his *appeal of right.* In cases in which the defendant dies pending a *discretionary appeal,* I would hold that such an appeal should be dismissed as moot, and that the conviction and collateral consequences of the conviction should stand.[1]

When a defendant dies while his appeal of right is pending, I believe that the defendant's *appeal* and *conviction* should be abated for the reason endorsed by some federal courts, and by the instant Court of Appeals panel:

> The Supreme Court may dismiss the petition without prejudicing the rights of the deceased petitioner, for he has already had the benefit of the appellate review of his conviction to which he was entitled of right. In contrast, when an appeal has been taken from a criminal conviction to the court of appeals and death has *deprived the accused of his right to [an appellate] decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of*

---

[1] The majority of federal courts likewise distinguish between appeals of right and discretionary appeals, and apply the abatement ab initio rule to abate at least the appeal and conviction when the defendant dies pending an appeal of right. See *United States v Davis,* 953 F2d 1482 (CA 10, 1992); *Clarke v United States,* 286 US App DC 256; 915 F2d 699 (1990); *United States v Williams,* 874 F2d 968 (CA 5, 1989); *United States v Schumann,* 861 F2d 1234 (CA 11, 1988); *United States v Mollica,* 849 F2d 723 (CA 2, 1988); *United States v Wilcox,* 783 F2d 44 (CA 6, 1986); *United States v Littlefield,* 594 F2d 682 (CA 8, 1979); *United States v Bechtel,* 547 F2d 1379 (CA 9, 1977).

*his appeal, which is an "integral part of [our] system for finally adjudicating [his] guilt or innocence." Griffin v Illinois, 351 US 12, 18; 76 S Ct 585, 590; 100 L Ed 891 (1956). [United States v Moehlenkamp, 557 F2d 126, 128 (CA 7, 1977). Emphasis added. See also United States v Asset, 990 F2d 208, 210-211 (CA 5, 1993); United States v Oberlin, 718 F2d 894 (CA 9, 1983); United States v Pauline, 625 F2d 684, 685 (CA 5, 1980); 205 Mich App 312, 317; 517 NW2d 773 (1994).]*

When a defendant dies while his appeal of right is pending, I believe that any *further sanctions or orders arising from the defendant's conviction* should be abated for the following reasons stated by the instant Court of Appeals panel:

In contrast to the holding in [*United States v*] *Dudley* [739 F2d 175 (CA 4, 1984)], we hold that a restitution order is dismissed when it is based on a criminal conviction that is abated ab initio. We arrive at this conclusion by considering the rationale behind the principle of abatement, which provides that a defendant should not stand convicted when death deprives the defendant of the right to an appellate decision. [*United States v Asset, supra* at 210-211.] This rationale is based on the premise that the resolution of an appeal can reverse a conviction. It is obvious that an appellate decision can also reverse those orders arising from a conviction such as a restitution order. Furthermore, the importance of an appellate decision is apparent in the Michigan Constitution, which declares that criminal defendants have a right to appeal. Const 1963, art 1, § 20. With this in mind, we believe that the principle of abatement extends to a restitution order where a defendant's death prevents an appeal of the defendant's conviction.

* * *

In order to abide by defendant's right to appeal, we dismiss the restitution order because appellate review is not possible. Although the victim has a right to restitution, this right does not entitle the

victim to restitution imposed by an order that is not subject to appellate review.

In addition, we disagree with the analysis in *Dudley* that a restitution order survives abatement ab initio of the underlying conviction on the ground that the primary purpose of restitution is to compensate the victim. Restitution under MCL 780.766(2); MSA 28.1287(766)(2) is part of the court's sentence, see [*People v*] *Schluter* [204 Mich App 60; 514 NW2d 489 (1994)], and is dependent upon the existence of a conviction. If the conviction is void, then the restitution order also becomes void because a victim's right to restitution remains dependent on a conviction. Thus, we are not convinced that a restitution order's compensatory purpose determines whether the order survives abatement ab initio of the underlying conviction. [205 Mich App 319-320.]

Obviously, I have a fundamental difference of opinion with the majority concerning the significance of a convicted defendant's constitutional right to an appeal. I cannot accept the majority's position that considerations of judicial economy are more important than assuring a proper appellate resolution of the guilt or innocence of a convicted defendant. ("[I]t is better policy to allow the litigation to end and the presumptively valid conviction to stand than it is to allow the convicted defendant's survivors to pursue litigation ad infinitum, in an effort to clear the deceased defendant's name." *Ante* at 521.) In my view, the interest of justice requires deference to a criminal defendant's constitutional right to an appeal when the defendant dies during the pendency of an appeal of right. While I am aware that a victim has a constitutional right to restitution and that a convicted defendant is no longer presumed innocent, I also believe that when the issues are compensation stemming from a conviction versus a final adjudication of a defendant's guilt or innocence, notions

of fundamental fairness demand giving priority to the latter guarantee.[2]

Because the defendant in this case died during the pendency of his appeal of right, I would abate the entire criminal cause—including the restitution order stemming from the conviction. The decision of the Court of Appeals should be affirmed.

Levin, J., concurred with Cavanagh, J.

---

[2] The majority misreads the Court of Appeals analysis of the compensatory component to the restitution order. The majority indicates that the reason that the Court of Appeals abated the restitution order in this case was because the Court considered the order to be "primarily penal." *Ante* at 526.

The Court of Appeals explicitly acknowledged both the compensatory and penal qualities of a restitution order. ("This Court has recognized that the purpose of restitution is to compensate the injured party. . . . In addition, a restitution order authorized under statute has punitive aspects." 205 Mich App 319.) However, the Court of Appeals did not find it necessary to determine which qualities predominated in the instant order because the Court's analysis of the abatement rule's application to the order did not turn upon the purpose of the order. Instead, the Court emphasized the relationship between the conviction and the restitution order. Recognizing that the conviction had to be abated under its understanding of the abatement doctrine, and further recognizing that the restitution order in this case was based on that conviction, the Court concluded that the restitution order likewise had to be abated. See, i.e., "If the conviction is void, then the restitution order also becomes void because a victim's right to restitution remains dependent on a conviction." 205 Mich App 320. Thus, contrary to the majority's suggestion, whether the restitution served a compensatory or penal purpose was not the dispositive factor under the Court of Appeals analysis.