*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

TOMMIE LEE CRAIG,

        Defendant-Appellee.

FOR PUBLICATION
July 7, 2022
9:00 a.m.

No. 357896
Wayne Circuit Court
LC No. 18-006219-01-FC

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

RIORDAN, J.

In April 2019, a jury convicted defendant, Tommie Lee Craig, of one count of kidnapping, MCL 750.349; four counts of criminal sexual conduct in the first degree (CSC-I), MCL 750.520b(1)(c) (sexual penetration involving the commission of a felony); and three counts of criminal sexual conduct in the third degree (CSC-III), MCL 750.520d(1)(c) (sexual penetration with a victim that is mentally incapable, mentally incapacitated, or physically helpless). The trial court sentenced defendant to concurrent sentences of 16 to 35 years' imprisonment for the kidnapping conviction and each of the CSC-I convictions, and 10 to 15 years' imprisonment for each of the CSC-III convictions. Defendant appealed as of right on June 10, 2019, but subsequently moved the trial court to settle the record or grant a new trial because the trial transcript for the last day of the three-day jury trial was missing. The trial court granted defendant a new trial on April 12, 2021, and the prosecution filed a cross-appeal regarding the grant of a new trial on May 3, 2021.

On July 21, 2021, we severed the prosecution's cross-appeal into an independent appeal as of right, and we held defendant's appeal in abeyance pending our decision on the prosecution's appeal. *People v Craig*, unpublished order of the Court of Appeals, entered July 21, 2021 (Docket No. 349363). On appeal, the prosecution argues that the trial court abused its discretion by granting defendant a new trial because the trial judge failed to properly settle the record and defendant did not allege any specific error in the surviving record. We disagree and affirm.

## I. FACTS

On July 22, 2018, the prosecution charged the defendant with one count of kidnapping, four counts of CSC-I, and three counts of CSC-III. The prosecution alleged that defendant knowingly restrained the 16-year-old victim and sexually penetrated her multiple times. Each of the CSC-I charges was predicated on defendant committing the CSC during the commission of the kidnapping. In each of the CSC-III charges, the prosecution alleged that defendant sexually penetrated the victim with knowledge that the victim was "mentally disabled." Although the CSC-III statute uses the phrase "mentally incapable," see MCL 750.520d(1)(c), the prosecution crossed out the word "incapable" and wrote in "disabled" on the felony information.

At the beginning of trial, on April 1, 2019,[1] the trial court indicated that it would provide the jury with preliminary instructions regarding the elements of the charged offenses, but it failed to do so. After several witnesses, including the victim, testified over three days, the jury found defendant guilty as charged.

It was discovered almost a year after the trial concluded, on March 13, 2020, that the transcript from the third and final day of the trial was unavailable because the court reporter lost her notes for that day.[2] Upon learning of this, defendant moved the trial court to settle the record by certifying a statement of facts to substitute for the missing transcript or, in the alternative, if a sufficiently detailed statement of facts seemed impossible to reconstruct, grant a new trial.

On June 25, 2020, the trial court held an evidentiary hearing in an attempt to settle the record for the proceedings of April 3, 2019. At the hearing, the prosecutor and defense counsel testified to their respective memories of the events of that day. Defense counsel testified that he did not recall much about either the testimony or his strategy from that day, nor did he have any record of the questions he asked any witnesses. Defense counsel also could not recall whether he made any specific evidentiary objections; whether he made any offers of proof on which the trial court relied; whether he made a motion for a directed verdict; whether he gave a closing argument; whether defendant testified; whether he called any witnesses; the substance of jury instructions; whether he objected to jury instructions; or whether the trial court made any specific rulings.

Defense counsel did recall that the "case revolved around . . . [the victim's] mental capacity as an adult because she was of the age to consent to sex [with defendant], but it was whether or not she was functioning at a level of a regular person where she could give consent." Although defense counsel did not know whether the victim testified on the day in question, he recalled the general nature of the victim's testimony, which included testimony about having sex with defendant. Defense counsel could not remember any specific inconsistencies in the victim's testimony, but he cross-examined the victim to gauge her mental abilities and whether she could legally give consent. Defense counsel opined that if he made a closing argument, his strategy

---

[1] The late-Judge Dalton A. Roberson presided over the trial and sentencing proceedings before the docket was assigned to Judge Noah P. Hood, who presided over all subsequent proceedings.

[2] Although the jury announced its verdict on the fourth day of trial, all of the relevant proceedings for the trial itself were completed on the third day.

would have been to highlight "whether or not [the victim] was so diminished mentally that she could not consent" to sex with defendant.

The prosecutor testified that the victim was the only witness who testified on April 3, 2019, but he could remember only "[t]he generalness" of the victim's testimony. The prosecutor recalled that the victim testified about one instance of fellatio and two instances of vaginal intercourse, but he could not recall whether the victim testified about cunnilingus. The prosecutor could not recall any specific issues on which defense counsel cross-examined the victim. However, the prosecutor remembered that defense counsel challenged the victim's memory and "that one of the big issues was her ability to consent" to sex with defendant.

The prosecutor recalled providing a closing argument that emphasized the victim's affect during her testimony and arguing that she had an inability to consent to sex with defendant. The prosecutor could not recall what defense counsel argued in his closing argument, but the prosecutor did not object during defense counsel's closing, nor did defense counsel object during the prosecutor's closing. The trial court instructed the jury, and the prosecutor recalled that neither party had any objection to the instructions.

On July 15, 2020, defendant filed a brief requesting a new trial because it was impossible to certify a settled statement of facts in sufficient detail to provide for appellate review. Defendant asserted that the testimony from the evidentiary hearing could not sufficiently recreate the record because it did not contain the victim's critical testimony, details of defense counsel's performance, defense counsel's treatment of the evidence, and the substance of the jury instructions. Defendant maintained that the inability to recreate the record also stemmed from the lack of a preliminary examination or pretrial motions, the lack of an opening statement by defense counsel, and the trial court's failure to give preliminary jury instructions. Without this critical information, defendant argued, his appellate counsel could not meaningfully evaluate whether he was afforded the effective assistance of trial counsel, thereby denying him the effective assistance of appellate counsel.

On July 29, 2020, the prosecution filed a brief opposing defendant's motion for a new trial, arguing that a missing transcript does not automatically entitle a defendant to a new trial. The prosecution argued that defendant failed to disclose any specific allegations of error, thus making it impossible to determine whether the existing record, or a settled statement of facts, could sufficiently resolve the appellate issue or issues involved in the case. The prosecution also provided a proposed settled statement of facts that reflected the testimony from the evidentiary hearing, and it argued that the statement sufficiently accounted for the missing transcript and would allow for appellate review. Accordingly, the prosecution requested that the trial court deny defendant a new trial and certify its proposed statement of facts as a substitute for the missing transcript.

On April 12, 2021, the trial court issued an opinion and order granting defendant a new trial. The trial court reasoned:

> Although trial counsel for the prosecution provided significant details about the
> testimony that was provided [on April 3, 2019], the Court is unable to complete the
> record to afford any meaningful appellate review. The evidentiary hearing clarified

what testimony and events occurred on the dates for which there is no transcript, but without transcripts of the motion for a directed verdict, jury instructions, verdict, specific objections, or the testimony of the complaining witness, on a comparatively unique, criminal sexual conduct case, the court cannot certify the record.

The trial court concluded that the proposed statement of facts was "factually accurate but necessarily incomplete" because "[t]he specifics of critical parts of the case remain absent," which was "particularly concerning in a case where the appeal may focus on the sufficiency of evidence or issues with jury instructions." The trial court also found that the missing transcript deprived defendant of his right to an appeal because appellate counsel could not adequately review the record for potential errors regarding jury instructions, effectiveness of counsel, sufficiency of the evidence, the victim's testimony, or modifications to the charges. Consequently, the trial court ruled that defendant was entitled to a new trial because he had no "ability to raise, let alone address, appealable issues."

## II. STANDARD OF REVIEW

We review de novo issues of constitutional law, *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014), and we review for an abuse of discretion a trial court's decision on a motion for a new trial, *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable outcomes." *Id.*

## III. DISCUSSION

Generally, criminal defendants have a constitutional right "to have an appeal." Const 1963, art 1, § 20. See also *People v Peters*, 449 Mich 515, 519; 537 NW2d 160 (1995). In addition, criminal defendants have a constitutional right to the effective assistance of appellate counsel. *Evitts v Lucey*, 469 US 387, 396; 105 S Ct 830; 83 L Ed 2d 821 (1985). Criminal defendants are effectively deprived of their right to appeal if appellate counsel is ineffective, see *id.* at 396-397, such as through appellate counsel's unreasonable failure to file a merits brief, *Smith v Robbins*, 528 US 259, 286-288; 120 S Ct 746; 145 L Ed 2d 756 (2000). Further, this Court has held that "the inability to obtain the transcripts of criminal proceedings may so impede a defendant's right of appeal [under Const 1963, art 1, § 20] that a new trial must be ordered." *People v Horton*, 105 Mich App 329, 331; 306 NW2d 500 (1981).[3]

"The failure of the State to provide a transcript when, after good faith effort, it cannot physically do so, does not automatically entitle a defendant to a new trial." *People v Carson*, 19 Mich App 1, 7; 172 NW2d 211 (1969). For example, if a defendant argues that he or she was not given statutory notice of the right to a jury trial and there is no transcript of the relevant proceeding, the "presumption of regularity" applies and, "[i]n the absence of substantial proofs to the contrary,"

---

[3] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *Redmond v Heller*, 332 Mich App 415, 431 n 7; 957 NW2d 357 (2020) (quotation marks and citation omitted).

it will be presumed that the official discharged his or her "public duty" in this regard. See *People v Robinson*, 33 Mich App 304, 306-307; 189 NW2d 777 (1971). Moreover, "[w]hen the surviving record is sufficient to allow evaluation of the appeal, the defendant's [constitutional] right is satisfied." *People v Wilson*, 96 Mich App 792, 797; 293 NW2d 710 (1980). "Whether a record is sufficient in a particular case will of course depend upon the questions that must be asked of it." *Id*. That is, "[w]here only a portion of the trial transcript is missing, the surviving record must be reviewed in terms of whether it is sufficient to allow evaluation of defendant's claim on appeal." *People v Federico*, 146 Mich App 776, 779; 381 NW2d 819 (1985). See also *People v Audison*, 126 Mich App 829, 835; 338 NW2d 235 (1983) (concluding that because the record was elsewhere "sufficient to disclose the presence of reversible error," the defendant was not deprived of his constitutional right to an appeal due to the fact that portions of the trial transcript were missing).[4]

In addition to the constitutional rights requiring a sufficient record of trial proceedings, MCR 8.108(B)(1) provides that "[t]he court reporter or recorder shall . . . take a verbatim record" of most court proceedings.[5] If a criminal defendant discovers during the pendency of an appeal that a transcript is unavailable, the defendant must file "a motion to settle the record and, where reasonably possible, a proposed statement of facts" to serve as a substitute for the transcript. MCR 7.210(B)(2)(a). "A proposed statement of facts must concisely set forth the substance of the testimony [from the missing transcript] . . . in sufficient detail to provide for appellate review." *Id*. The prosecution may amend or object to any proposed statement of facts, and the trial court must hold a hearing to "settle any controversy and certify a settled statement of facts as an accurate, fair, and complete statement of the proceedings before it." MCR 7.210(B)(2)(b) and (c). "The certified settled statement of facts must concisely set forth the substance of the testimony, or the oral proceedings before the trial court or tribunal if no testimony was taken, in sufficient detail to provide for appellate review." MCR 7.210(B)(2)(c).

The issue here is whether the lack of a transcript, or other detailed record, of the April 3, 2019 proceedings violates defendant's constitutional right to an appeal under Const 1963, art 1, § 20.[6]

---

[4] In a civil case, this Court explained that "[w]here the record is insufficient, we have remanded cases for the construction of a new record to allow review of the issue on appeal." *Elazier v Detroit Non-Profit Housing Corp*, 158 Mich App 247, 250; 404 NW2d 233 (1987). "When, after remand, it is clear that no settlement of the facts is possible, then the grant of a new trial is permissible to preserve a defendant's right to appeal." *Id*.

[5] MCL 600.1111 provides that "[t]he reporter or recorder shall perform the duties assigned by the rules of the supreme court . . . ."

[6] Other courts, such as the United States Court of Appeals for the Sixth Circuit, have indicated that the inability to obtain complete transcripts is an issue of due process. See *Bransford v Brown*, 806 F2d 83, 86 (CA 6, 1986) ("[W]here the defendant's trial attorney communicated with his appellate attorney, the absence of the jury instruction transcripts is not a *per se* denial of his due process right to a fair appeal. . . . Instead, in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcripts.").

Looking to the federal courts for guidance,[7] recently the United States Court of Appeals for the Third Circuit addressed the standard for relief for violations of the Court Reporter Act, 28 USC 753, which provides that "[e]ach session of the court" must be "recorded verbatim." 28 USC 753(b). In *United States v Savage*, 970 F3d 217 (CA 3, 2020), the Third Circuit explained that "[l]itigants typically seek relief under the Court Reporter Act when an unanticipated technical malfunction, human error or natural disaster renders transcripts of proceedings unavailable." *Id*. at 239. "Only when a defendant shows a 'colorable need' for the missing transcripts will we grant Court Reporter Act relief." *Id*. (citations omitted).

> To show a colorable need, a defendant must do two things. First, a defendant must make a specific showing of prejudice. In other words, a defendant must particularly assert what the missing record would show and why it would justify relief. Second, a defendant must explain why [Fed. R. App. P. 10(c)'s] record-reconstruction procedure cannot cure the prejudice. [*Id*. at 239-240 (quotation marks and citations omitted).][8]

The Third Circuit added that "[e]very circuit to consider this issue has agreed that an appellant must specifically show prejudice and explain why [Fed. R. App. P. 10] reconstruction won't work before obtaining Court Reporter Act relief." *Id*. at 240 n 10. However, the Third Circuit noted, "the Fifth Circuit has relaxed those requirements when an appellant has new counsel on appeal and the alleged omission is substantial and significant." *Id*. (quotation marks and citation omitted). Thus, for example, "the complete absence of closing arguments from the record" warrants a new trial under the Fifth Circuit standard because "the lack of a transcript of the arguments to the jury would be a substantial and significant omission." *United States v Preciado-Cordobas*, 981 F2d 1206, 1214 (CA 11, 1993).[9]

The question before us is the extent to which defendant must be "prejudiced" by the lack of a transcript or other detailed record of the April 3, 2019 proceedings to be entitled to relief. Here, the prosecution and defendant disagree on the threshold showing of prejudice that must be established to entitle him to relief. According to the prosecution, defendant must show prejudice through the inability to review his "specific allegations of error." In contrast, according to defendant, he must show prejudice through the inability of his "appellate counsel to provide effective assistance" by reviewing the trial proceedings. In other words, defendant suggests that when the record is insufficient for his appellate counsel to identify and argue potentially meritorious legal issues, he has shown prejudice.

---

[7] "Caselaw from . . . federal courts is not binding precedent but may be relied on for its persuasive value." *Haysaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

[8] Fed. R. App. P. 10(c) is similar to MCR 7.210(B)(2).

[9] The Eleventh Circuit follows the Fifth Circuit rule "as binding precedent, since it predates 1981 legislation splitting the original Fifth Circuit into the present-day Fifth and Eleventh Circuits." *Savage*, 970 F3d at 240 n 10.

-6-

We need not resolve this disagreement today because we conclude that even under the prosecution's standard for prejudice, defendant showed sufficient prejudice to warrant a new trial.[10] Defendant did not baldly assert that the missing transcript *might* reveal the existence of error warranting reversal. Rather, defendant cited specific facts from the surviving record and the evidentiary hearing to identify multiple possible appellate issues for which, if meritorious, he would otherwise be entitled to a new trial. Thus, the defendant has shown prejudice because of his inability to review whether error exists in that regard.

First, defendant alleges that the trial court may have provided improper jury instructions mirroring the prosecution's questionable modification of the CSC-III charges in the felony information where the prosecution crossed off the phrase "mentally incapable" and wrote in "mentally disabled." MCL 750.520d(1)(c) states that a person is guilty of CSC-III if he or she engages in sexual penetration with someone the defendant knows or has reason to know is "mentally incapable, mentally incapacitated, or physically helpless." MCL 750.520b(1)(h), on the other hand, states that a person is guilty of CSC-I if he or she engages in sexual penetration with someone who is "mentally incapable, mentally disabled, mentally incapacitated, or physically helpless," and the actor is either related to the victim or uses his or her authority to coerce the victim. MCL 750.520a(i) through (k), which provides definitions applicable to all the CSC statutes, separately defines "mentally disabled," "mentally incapable," and "mentally incapacitated." Thus, the Legislature created a meaningful distinction between these phrases by defining each separately and by applying them differently in each statute. The distinctions also show the Legislature did not intend to criminalize as CSC-III sexual penetration with someone who is "mentally disabled," as the prosecution asserted, because MCL 750.520d(1)(c) only criminalizes sexual penetration with someone who is "mentally incapable" or "mentally incapacitated." See *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011) ("[C]ourts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute.") (quotation marks and citation omitted). Consequently, again contrary to the prosecution's alteration of the CSC-III statutory language in the felony information, defendant could not be convicted of CSC-III for engaging in sexual penetration with someone who is mentally disabled absent other aggravating circumstances. If the final jury instructions reflected the prosecution's questionable alteration of the CSC-III charge, defendant may be entitled to retrial. See *People v Carines*, 460 Mich 750, 753; 597 NW2d 130 (1999) (explaining that the trial court's failure to properly instruct the jury was plain error). Because nothing in the record, including from the evidentiary hearing after the missing transcript was discovered, indicates whether the final jury instructions mirrored the questionable alteration of the CSC-III charges, it is impossible to review whether the trial court erred by providing incorrect jury instructions.

Second, defendant alleges that there is "the possible insufficiency of the evidence to show the kind of 'knowing restraint' needed to prove kidnapping," given that the victim's testimony was

---

[10] We note, however, that the prosecution's standard for prejudice is apparently consistent with the majority of federal circuits to have addressed the issue. To the extent that defendant argues that he is entitled to a new trial simply because a transcript of a critical day of trial is unavailable, he would be correct under the standard adopted by the Fifth Circuit. See *v Preciado-Cordobas*, 981 F2d at 1214.

the only evidence to this element of the offense. See MCL 750.349(1)(c) ("A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to . . . [e]ngage in criminal sexual penetration . . . with that person."). In other words, defendant argues that the victim may not have sufficiently testified that he knowingly restrained her, which would necessarily render the evidence insufficient to prove kidnapping, as well as the accompanying CSC-I charges that were predicated upon this felony. See *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 ("[D]ue process requires the prosecution to prove every element beyond a reasonable doubt."). The testimony at the record-settlement hearing concerning this issue was vague at best. Again, without the transcript at issue or a satisfactory replacement, it is impossible to review this allegation of error.

Defendant has identified two potential errors that entitle him to a new trial on all charges, and the absence of the transcript from the trial's third and final day is prejudicial and is denying him the opportunity for a fair appeal. See *Federico*, 146 Mich App at 779. Therefore, we conclude that the trial court did not abuse its discretion by granting defendant a new trial.

Even so, the prosecution contends that granting a new trial would be an abuse of discretion for two reasons. First, the prosecution argues that the trial court granted defendant a new trial simply because the transcript at issue was missing, without requiring him to show a specific claim of error that would be reviewable if the transcript was available. According to the prosecution, cases such as *Federico* stand for the proposition that a criminal defendant only is entitled to relief when the existing and supplemental record is insufficient to review his or her "*specific* allegations of error." We agree with the prosecution that cases such as *Federico* establish that rule. However, for the reasons previously explained, we conclude that defendant has raised specific allegations of error to satisfy that rule.[11]

Second, the prosecution notes that defendant did not identify his alleged claims of error until *after* the record-settlement hearing, and granting him a new trial on this basis would "give every defendant the ability to defeat the sufficiency of any settled record—no matter how extensive—so long as he was imaginative enough to identify some claim that had not been contemplated and disproven at the hearing itself." We acknowledge the potential for gamesmanship and believe that appellants should typically seek to identify potential factual or legal issues before a record-settlement hearing occurs. However, such gamesmanship is not present here, where the record of a critical day of trial is completely missing and there is little else in the record to corroborate what occurred that day, such as a record of the preliminary jury instructions or a transcript of any preliminary hearing. Under these circumstances, defendant cannot be faulted for an initial failure to identify potential factual or legal issues. More

---

[11] Thus, we do not necessarily agree with the reasoning of the trial court to the extent that it concluded that defendant was entitled to relief simply because the transcript of the April 3, 2019 proceedings was unavailable and could not be reconstructed in detail. Defendant is entitled to relief not merely because the transcript is unavailable and cannot be reconstructed, but because his specific allegations of error are unreviewable as a result and, thus, the defendant is prejudiced thereby.

importantly, we note that the prosecution did not contend below, and does not contend on appeal, that an additional evidentiary hearing would be sufficient to establish a record to address the allegations of trial error. Therefore, we are not persuaded by the prosecution's arguments that we should deny defendant the relief he seeks.[12]

## IV. CONCLUSION

While we recognize and sympathize with those witnesses whose testimony may be required in a retrial, for the reasons set forth herein, we conclude that the missing transcript of the April 3, 2019 proceedings deprived defendant of his constitutional right to an appeal under Const 1963, art 1, § 20. Accordingly, the trial court did not abuse its discretion in granting defendant a new trial, and we affirm.


/s/ Michael J. Riordan
/s/ Anica Letica
/s/ Kirsten Frank Kelly

---

[12] The prosecution also briefly suggests that defendant must provide some independent corroboration of his alleged claims of error, such as witness affidavits, to be entitled to relief. In support, the prosecution cites *People v Abdella*, 200 Mich App 473; 505 NW2d 18 (1993), which held that a defendant is entitled to relief for an allegedly mistaken transcript if he or she is able to "provide some independent corroboration of the asserted inaccuracy." *Id*. at 476. *Abdella* is not controlling in this case, however, because *Abdella* involved a collateral attack on a conviction under MCR 6.500 *et seq*. This case, in contrast, involves the constitutional right to an appeal under Const 1963, art 1, § 20, and therefore cases such as *Wilson* and *Federico* are on point.