# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v GARRISON

Docket No. 146626. Argued November 7, 2013. Decided May 29, 2014.

Chad J. Garrison pleaded guilty in the Cheboygan Circuit Court to one count of larceny of property valued at $1,000 or more but less than $20,000, MCL 750.356(1) and (3)(a), as a second-offense habitual offender. While the case was pending, the three victims of defendant's theft had traveled back and forth from their primary residences to secure their stolen property and attend a restitution hearing. At the hearing, the victims testified that they had incurred travel expenses related to those trips in the cumulative amount of $1,125. Over defense counsel's objection, the court, Scott L. Pavlich, J., included $977 of this amount in its restitution order. Defendant appealed. The Court of Appeals, FITZGERALD, P.J., and BOONSTRA, J. (METER, J., concurring in part and dissenting in part), affirmed in part but reversed with respect to that issue in an unpublished opinion per curiam, issued December 20, 2012 (Docket No. 307102), concluding that the sentencing court had abused its discretion because neither the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*., nor the general restitution statute, MCL 769.1a, authorizes courts to include victims' travel expenses in a restitution award. The Court of Appeals remanded for a redetermination of restitution, and the prosecution sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action. 493 Mich 1015 (2013).

In an opinion by Justice VIVIANO, joined by Chief Justice YOUNG and Justices CAVANAGH, KELLY, and ZAHRA, the Supreme Court *held*:

The Court of Appeals erred by reversing in part and remanding this case for a redetermination of restitution. The CVRA and MCL 769.1a authorize courts to order a defendant to pay restitution for the reasonable travel expenses that victims incur while securing their stolen property and attending restitution hearings. MCL 780.766(1) (part of the CVRA provision that applies to felony convictions) and MCL 769.1a(1)(b) define "victim" as an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime. MCL 780.766(2) and MCL 769.1a(2) provide that sentencing courts must order a defendant convicted of a crime to make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. The statutory language imposes a duty on sentencing courts to order defendants to pay restitution that is maximal and complete. While other subsections of the statutes give sentencing courts specific instructions regarding what must be included in a restitution order for certain losses, such as when a crime results in damage to or loss or destruction of property, nothing in those statutes

indicates that courts may only award restitution for the types of losses described in those subsections. They do not contain an exhaustive list of all types of restitution available under Michigan law for victims who suffer particular losses. For instance, not all crime victims suffer property damage, personal injury, or death, but many of those otherwise unharmed victims must travel to reclaim property, identify perpetrators, or participate in the investigatory process in the aftermath of a crime. These travels impose a real financial burden on victims in the form of transportation expenses. Holding that the statutes exclude those losses would not give effect to the connection that the Legislature made between the financial harm a person suffers and that person's status as a victim. While another statute in the CVRA, MCL 780.766b, expressly authorizes courts to order defendants convicted of human-trafficking offenses to pay restitution for transportation costs incurred by victims of those crimes, MCL 780.766b did not expand the restitution authority of sentencing courts; rather, the Legislature was ensuring that sentencing courts did not overlook the types of losses that were likely to be common in the human-trafficking context. The victims' immediate need in this case to recover their property, inventory their losses, and explain their losses in court was a natural consequence of defendant's criminal activity. Hence, their travel expenses were a direct result of defendant's criminal course of conduct, and the sentencing court's decision to include those expenses in its restitution order was in keeping with the court's statutory duty to order defendant to pay full restitution.

Reversed with respect to restitution of travel expenses and remanded to the sentencing court for reinstatement of the original restitution order.

Justice MARKMAN, joined by Justice MCCORMACK, dissenting, would have affirmed the Court of Appeals' judgment and held that crime victims are not entitled under current law to the reimbursement of reasonable travel expenses they incurred in the course of traveling to recover property or attend a restitution hearing. Under the majority's view, courts may award restitution beyond that explicitly set forth in the statutes if necessary to fully compensate a victim for the loss that he or she sustained. If the majority's interpretation were correct, however, there would have been no need for the Legislature to articulate in detail the nature of the restitution contemplated. The Legislature could simply have required courts to award full restitution to crime victims and left it at that, rather than setting forth highly detailed directions about what forms of costs are subject to restitution. By specifying in MCL 780.766(3) that some forms of restitution must be awarded for a crime resulting in property injury, while specifying in MCL 780.766(4) and (5) that other forms must be awarded for a crime resulting in psychological or physical injury, the Legislature indicated that a sentencing court cannot award whatever restitution it believes is necessary to fully compensate a victim, but must instead examine the relevant subsection of MCL 780.766 to award the particular restitution contained in that provision. The Legislature expressly provided for the restitution of travel expenses in MCL 780.766(8) and MCL 780.766(24)(c), but did not do the same in MCL 780.766(3), implying that such restitution is available only under those specific circumstances and is not available under other circumstances or to other persons. Moreover, MCL 780.766b specifically states that for victims of human-trafficking crimes, the court may order the costs of transportation incurred by the victim, as well as the costs and expenses relating to assisting the investigation of the offense and attendance at related court proceedings, including transportation and parking, in addition to restitution ordered under MCL 780.766, strongly suggesting that the omission of those expenses from MCL 780.766 was significant and purposeful.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED MAY 29, 2014

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                              No. 146626

CHAD JAMES GARRISON,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

This case involves two related statutory schemes: the William Van Regenmorter Crime Victim's Rights Act (CVRA)[1] and Michigan's general restitution statute.[2] The issue is whether these statutes authorize courts to order a defendant to pay restitution for the reasonable travel expenses that victims incur while securing their stolen property and attending restitution hearings. We conclude that the statutes do authorize such payments

---

[1] MCL 780.751 *et seq*.

[2] MCL 769.1a

because they require courts to order full restitution, i.e., restitution that is complete and maximal. Therefore, in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals on this issue and remand this case to the Cheboygan Circuit Court for reinstatement of the original restitution order.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant, Chad James Garrison, stole four snowmobiles and two trailers from vacation homes in Cheboygan County. He pleaded guilty to one count of larceny of property valued at $1,000 or more, but less than $20,000, in violation of MCL 750.356(1) and (3)(a), as a second-offense habitual offender. While the case was pending, the three victims of defendant's theft traveled back and forth from their primary residences in order to secure their stolen property and attend a restitution hearing. At the hearing, the victims testified that they had incurred travel expenses related to these trips in the cumulative amount of $1,125. The sentencing court included $977 of this amount in its restitution order over defense counsel's objection.

Defendant appealed, and the Court of Appeals reversed the lower court on this issue. Relying on the reasoning of *People v Jones*,[3] the Court determined that neither the CVRA nor MCL 769.1a authorizes courts to include victims' travel expenses in a restitution award.[4] The Court concluded that the sentencing court abused its discretion by doing so in this case.

---

[3] *People v Jones*, 168 Mich App 191; 423 NW2d 614 (1988).

[4] *People v Garrison*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2012 (Docket No. 307102), p 2.

2

Judge METER dissented from that portion of the majority opinion, arguing instead that, under MCL 780.766(2), sentencing courts have a statutory duty to make victims whole for the losses that criminals cause. Although the applicable restitution statutes do not include victims' travel expenses in their lists of compensable losses, Judge METER did not view those lists as exhaustive because of the overarching duty created by MCL 780.766(2).[5]

The prosecution sought leave to appeal the Court of Appeals' decision in this Court. On May 3, 2013, we ordered oral argument on the prosecution's application pursuant to MCR 7.302(H)(1).[6]

## II. STANDARD OF REVIEW

This case presents a question of statutory interpretation. We review such questions de novo.[7] We review the sentencing court's factual findings for clear error.[8]

## III. ANALYSIS

Our goal in interpreting a statute is to give effect to the intent of the Legislature as expressed in the statute's language.[9] Absent ambiguity, we assume that the Legislature

---

[5] *Id.* at 1-2 (METER, J., dissenting).

[6] *People v Garrison*, 493 Mich 1015 (2013).

[7] *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012).

[8] *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

[9] See *People v Morey*, 461 Mich 325, 330; 603 NWS2d 250 (1999).

3

intended for the words in the statute to be given their plain meaning, and we enforce the statute as written.[10]

There are two main statutes that govern restitution in Michigan: MCL 780.766 (part of the CVRA)[11] and MCL 769.1a (the general restitution statute). Both statutes begin by defining "victim" as "an individual who suffers direct or threatened physical, *financial*, or emotional harm as a result of the commission of a crime."[12] The statutes then declare that sentencing courts "shall order" a defendant convicted of a crime to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate."[13] Several following subsections in the statutes go on to provide detailed instructions regarding how to calculate restitution for various types of injuries. Subsection (3) of each statute[14] pertains to property loss; Subsection (4)

---

[10] *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

[11] The CVRA is divided into three articles. Article 1, MCL 780.751 through MCL 780.775, addresses felony convictions and contains the provision at issue in this case. Article 2, MCL 780.781 through MCL 780.802, addresses various juvenile offenses, and Article 3, MCL 780.811 through MCL 780.834, addresses convictions for various misdemeanors. MCL 780.794(2) and MCL 780.826(2) have language regarding restitution similar to that in MCL 780.766(2).

[12] MCL 780.766(1) (emphasis added). As used in MCL 780.766, "crime" means a felony. MCL 780.752(1)(b). See note 11 of this opinion. MCL 769.1a replaces the word "crime" with the words "felony, misdemeanor, or ordinance violation." MCL 769.1a(1)(b).

[13] MCL 769.1a(2); MCL 780.766(2).

[14] MCL 769.1a(3); MCL 780.766(3).

4

of each statute[15] pertains to a victim's physical or psychological injury, and Subsection (5) of each statute[16] also pertains to bodily injury, including death.

We begin our analysis by focusing on the statutes' requirement that sentencing courts order "full restitution."[17] The statutes do not define "full restitution," but the plain meaning of the word "full" is "complete; entire; maximum[.]"[18] Hence, both restitution statutes impose a duty on sentencing courts to order defendants to pay restitution that is maximal and complete.

The CVRA and Article 1, § 24 of Michigan's Constitution were enacted as part of a movement intended to balance the rights of crime victims and the rights of criminal defendants.[19] One aim of these laws was "to enable victims to be compensated fairly for their suffering at the hands of convicted offenders."[20] The Legislature's statutory direction to order defendants to pay complete, entire, and maximum restitution effectuates this goal of fair compensation.

We acknowledge that in both MCL 780.766(3) and MCL 769.1a(3), the Legislature gave specific instructions to sentencing courts regarding what must be

---

[15] MCL 769.1a(4); MCL 780.766(4).

[16] MCL 780.766(5) refers to a bodily injury that results in death or serious impairment of a body function, while MCL 769.1a(5) refers to only the former.

[17] MCL 769.1a(2); MCL 780.766(2).

[18] *Random House Webster's College Dictionary* (2001).

[19] See Van Regenmorter, *Crime Victims' Rights—A Legislative Perspective*, 17 Pepperdine L R 59, 77 (1989).

[20] *People v Peters*, 449 Mich 515, 526; 537 NW2d 160 (1995).

5

included in a restitution order when a crime "results in damage to or loss or destruction of property of a victim" and that these subsections do not mention victims' travel expenses. However, this does not alter our conclusion that sentencing courts are authorized to include such costs in restitution awards. We read Subsections (3) of MCL 780.766 and MCL 769.1a as complementary to the broad mandate for complete restitution set out in their respective prior subsections, not contradictory. Subsections (3) tell courts how to evaluate specific types of losses when they occur. But nothing in the text of the statutes indicates that courts may only award restitution for the types of losses described in those subsections.[21] On the contrary, as explained above, the Legislature unambiguously instructed courts to order restitution that is "full," which means complete and maximal. Therefore, we conclude that these subsections do not contain an exhaustive list of all

---

[21] The dissent disagrees, arguing, "If 'full restitution' simply means restitution that is 'maximal and complete,' without reference to the adjacent statutory language purporting to define the term, there would have been no need for the Legislature to further specify [at the end of Subsection (2) of MCL 780.766] that courts shall order the restitution required 'under this section.'"

We find this argument unpersuasive. In full, the sentence that contains the phrase on which the dissent relies reads as follows: "For an offense that is resolved by assignment of the defendant to youthful trainee status, by a delayed sentence or deferred judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall order the restitution required under this section." MCL 780.766(2). This sentence makes it clear that courts must order "full restitution" even in certain cases in which the defendant has not been convicted of a crime. It does not state that sentencing courts may order only the specific restitution described in Subsections (3), (4), and (5).

Furthermore, the subsection that follows in the statute begins with language that is permissive, not restrictive. It states that a court shall require a defendant to do "1 or more of the following, as applicable[.]" MCL 780.766(3); MCL 769.1a(3) (providing that the court "may require that the defendant do 1 or more of the following, as applicable"). It does not state that a court may include *only* those amounts.

6

types of restitution available under Michigan law for victims who suffer property damage or loss.

Our conclusion that Subsections (3) to (5) are not exhaustive is also consistent with the CVRA's definition of "victim" for purposes of restitution, which includes those who suffer financial harm as the result of the commission of a crime.[22] Not all crime victims suffer property damage, personal injury, or death. But many of these otherwise unharmed victims must travel to reclaim property, identify perpetrators, or otherwise participate in the investigatory process in the aftermath of a crime. These travels impose a real financial burden on victims in the form of transportation expenses. If we treated Subsections (3) to (5) as excluding those losses, we would not give effect to the connection that the Legislature made between the financial harm that a person suffers and that person's status as a victim within the provisions of the CVRA.

The dissent argues that "[i]t would have been pointless for the Legislature to have gone through this additional effort to provide specific guidance concerning restitutable costs" if the Legislature had already given sentencing courts broad authority to award restitution for any actual losses by using the words "full restitution." We disagree. Even in view of the broad grant of authority from Subsection (2) of MCL 780.766 and MCL 769.1a, the specific instructions in Subsections (3) and following subsections prevent courts from overlooking common types of losses. They also promote consistency among different courts and cases by ensuring that judges use the same criteria when calculating

---

[22] MCL 780.766(1).

7

the value of these key losses. Hence, our interpretation of the statutes does not make Subsections (3) and following "pointless."[23]

In reaching this conclusion, we are mindful of MCL 780.766b, which expressly authorizes courts to order defendants convicted of human-trafficking offenses to pay restitution for transportation costs incurred by victims.[24] The dissent posits that because the Legislature thought it was necessary to mention transportation costs in the human-trafficking statute, it must not have thought that the other restitution statutes authorized courts to order restitution for those expenses. However, a closer reading of MCL 780.766b shows that this is not so. MCL 780.766b(c)(*i*) and (*ii*) authorize courts to order restitution for lost wages and child-care expenses in human-trafficking cases, but those same expenses were already authorized under MCL 780.766(4)(c) and (e) for *any* crime that causes physical or psychological injury.[25] Hence, the Legislature was not expanding the restitution authority of sentencing courts in MCL 780.766b. Instead, it appears the Legislature was ensuring that sentencing courts did not overlook types of losses that were likely to be common in the human-trafficking context.

---

[23] The dissent takes issue with our conclusion that the statute "means that 'full restitution' must be awarded." This is curious because the CVRA itself declares that the "court shall order . . . that the defendant make full restitution . . . ." MCL 780.766(2). In holding that this statute actually means what it says, we give effect to the intent of the Legislature.

[24] MCL 780.766b(c)(*iii*).

[25] See MCL 780.766(4)(c) (authorizing courts to order the defendant to "[r]eimburse the victim or the victim's estate for after-tax income loss suffered by the victim as a result of the crime") and MCL 780.766(4)(e) (authorizing courts to order the defendant to "[p]ay an amount equal to the reasonably determined costs of homemaking and child care expenses actually incurred and reasonably expected to be incurred as a result of the crime").

8

We are likewise unpersuaded by the dissent's use of the canon *expressio unius est exclusio alterius*, which states that the express mention of one thing implies the exclusion of other similar things.[26] The statute does not entitle the parents of victims or third parties who help victims to "full restitution," so it makes sense to read the lists of possible restitution awards for those parties as exclusive in relation to *those parties*. By contrast, the Legislature did provide a broad restitution mandate for victims, declaring that courts must order defendants to pay them full restitution, i.e., restitution that is complete and maximal. To read the Legislature's lists regarding third-party expenses as a limit on the restitution to which victims are entitled would allow the canon of *expressio unius* to overcome the plain meaning of the words in MCL 780.766(2). In other words, the dissent's interpretation would mean that third parties could recover restitution for transportation expenses, but that victims, who are entitled to "full restitution," could not.

Although courts must order defendants to pay "full restitution," their authority to order restitution is not limitless. The statute authorizes restitution only for damage or loss that results from a "defendant's course of conduct that gives rise to the conviction . . . ."[27] This is in keeping with the statute's definition of "victim" as "an individual who suffers *direct* or threatened physical, financial, or emotional harm *as a result* of the commission of a crime."[28] Thus, the losses included in a restitution order must be the result of defendant's criminal course of conduct.

---

[26] *Bianchi v Auto Club of Mich*, 437 Mich 65, 72; 467 NW2d 17 (1991).

[27] MCL 780.766(2).

[28] MCL 780.766(1) (emphasis added).

In this case, the Court of Appeals relied on *Jones* for the proposition that "neither MCL 769.1a nor the CVRA, MCL 780.766, authorizes the sentencing court to order a defendant to pay restitution to reimburse the victim for traveling expenses."[29] The Court of Appeals erred by relying on *Jones* because the law has changed since 1988, when *Jones* was decided. At that time, a victim's right to restitution was not yet enshrined in our state's Constitution. In addition, the version of MCL 780.766 in effect when Jones committed his crime stated that a sentencing court "*may* order . . . that the defendant make *restitution* . . . ."[30] Likewise, the prior version of MCL 769.1a stated that sentencing courts "*may* order . . . a person convicted of any felony or misdemeanor to make *full or partial* restitution . . . ."[31] Thus, sentencing courts used to have discretion regarding whether to order restitution at all and, if so, in what amount. Now, both statutes state that sentencing courts "*shall* order . . . *full* restitution." Hence, since *Jones*, the Legislature has decided that ordering restitution is mandatory, not discretionary, and that a restitution order must reflect the total amount of loss caused by a defendant's criminal conduct, not some lesser amount that a sentencing court might feel is appropriate. The Court of Appeals erred in this case by relying on precedent that did not account for these important changes in the governing statutes.

---

[29] *Garrison*, unpub op at 2.

[30] MCL 780.766(2), as enacted by 1985 PA 87 (emphasis added). "May" was changed to "shall" by 1993 PA 341.

[31] MCL 769.1a(1), as added by 1985 PA 89 (emphasis added). "May" was changed to "shall" by 1993 PA 343. The reference to "partial" restitution was deleted by 1996 PA 560.

## IV. APPLICATION

In this case, the victims' immediate need to recover their property, inventory their losses, and explain their losses in court was a natural consequence of defendant's criminal activity. Hence, their travel expenses were a direct result of defendant's criminal course of conduct. The sentencing court's decision to include these expenses in its restitution order was in keeping with its statutory duty to order defendant to pay "full restitution."

At the restitution hearing, the three victims testified that defendant's theft forced them to travel a combined distance of 2,250 miles to secure their property and attend the restitution hearing. They multiplied this number by a flat rate of 50 cents a mile, making their total travel-expenses claim $1,125. The court apparently discredited some portion of the victims' testimony, but found the rest believable, and included $977 of the claimed $1,125 in its restitution order. Defendant does not identify any evidence that shows that the sentencing court's factual finding was clearly erroneous.[32] Therefore, the Court of Appeals erred by reversing the sentencing court and remanding this case for a redetermination of restitution.

## V. CONCLUSION

Consistent with its statutory duty to order "full restitution," the sentencing court in this case properly included the victims' travel expenses in its restitution order. Accordingly, in lieu of granting leave to appeal, we reverse the judgment of the Court of

---

[32] *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

11

Appeals on this issue and remand this case to the Cheboygan Circuit Court for reinstatement of the original restitution order.

> David F. Viviano
> Robert P. Young, Jr.
> Michael F. Cavanagh
> Mary Beth Kelly
> Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                  No. 146626

CHAD JAMES GARRISON,

       Defendant-Appellee.

_____

MARKMAN, J. (*dissenting*).

I respectfully dissent from the majority opinion's decision to reverse the judgment of the Court of Appeals with respect to the issue before us and hold that a court may order a defendant to pay restitution for reasonable travel expenses incurred by the victim of the crime in the course of traveling to recover property or attend a restitution hearing. I would instead affirm the Court of Appeals' judgment and hold that crime victims are not entitled under current law to the reimbursement of those expenses, however much such restitution might be deemed entirely reasonable had it been authorized by the Legislature.

ANALYSIS

Crime victims have a statutory right to restitution, pursuant to both the Crime Victim's Rights Act (CVRA), MCL 780.751 *et. seq*., and the restitution provision of the Code of Criminal Procedure, MCL 769.1a. In particular, MCL 780.766 of the CVRA states:

(2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. For an offense that is resolved by assignment of the defendant to youthful trainee status, by a delayed sentence or deferred judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall order the restitution required under this section.

(3) If a crime results in damage to or loss or destruction of property of a victim of the crime or results in the seizure or impoundment of property of a victim of the crime, the order of restitution shall require that the defendant do 1 or more of the following, as applicable:

(a) Return the property to the owner of the property or to a person designated by the owner.

(b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value determined as of the date the property is returned, of that property or any part of the property that is returned:

(*i*) The fair market value of the property on the date of the damage, loss, or destruction. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

(*ii*) The fair market value of the property on the date of sentencing. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

(c) Pay the costs of the seizure or impoundment, or both.

\* \* \*

(8) . . . The court shall also order restitution for the costs of services provided to persons or entities that have provided services to the victim as a result of the crime. Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. . . .

\* \* \*

2

(24) If the victim is a minor, the order of restitution shall require the defendant to pay to a parent of the victim an amount that is determined to be reasonable for any of the following that are actually incurred or reasonably expected to be incurred by the parent as a result of the crime:

* * *

(c) Mileage.

* * *

(f) Any other cost incurred in exercising the rights of the victim or a parent under this act. [Emphasis added.]

The pertinent issue for purposes of the instant appeal-- whether a sentencing court may order a defendant to pay restitution to crime victims for travel expenses incurred while traveling to recover property or attend a restitution hearing-- may be resolved by a straightforward exercise in statutory interpretation, and the majority opinion does not appear to disagree. While the majority opinion cites various provisions of law in support of its conclusion that the applicable statutes permit such restitution, I believe that other provisions that compel a contrary conclusion are considerably more persuasive.[1]

First, the majority places great emphasis on the Legislature's use of the phrase "full restitution" in MCL 780.766(2), concluding that given the dictionary meaning of "full," "full restitution" must refer to restitution that is "maximal and complete." Under this view, courts may award restitution beyond that explicitly set forth in MCL 780.766 if necessary to "fully" compensate a victim for the loss that he or she has sustained.

---

[1] MCL 769.1a of the Code of Criminal Procedure is similar to MCL 780.766 of the CVRA, but is somewhat less expansive in its coverage and contains fewer mandatory provisions. Because all relevant provisions contained in MCL 769.1a are also contained in MCL 780.766, I will primarily focus upon MCL 780.766 for purposes of this opinion.

3

However, if this interpretation were correct, there would have been no need for the Legislature to have proceeded beyond its reference to "full restitution" in MCL 780.766(2) to articulate in detail the nature of the restitution contemplated by this statute. In other words, if "full restitution" refers to restitution in the limitless sense that the majority asserts, then the Legislature could simply have required courts to award "full restitution" to crime victims and left it at that, rather than setting forth highly detailed directions in the succeeding provisions of MCL 780.766 as to what forms of costs are subject to restitution. It would have been pointless for the Legislature to have gone through this additional effort to provide specific guidance concerning restitutable costs if the Legislature had simply intended for "full restitution" to mean "full restitution," as opposed to "full restitution" as subsequently delineated by the very statute in which the term appears.[2]

Second, while MCL 780.766(2) requires a defendant to make "full restitution" to any victim of the defendant's course of conduct, the very same paragraph proceeds to state that "the court shall order the restitution required *under this section*." (Emphasis added.) If "full restitution" simply means restitution that is "maximal and complete," without reference to the adjacent statutory language purporting to define the term, there would have been no need for the Legislature to further specify that courts shall order the restitution required "under this section." That is, the language "under this section" is

---

[2] The majority's interpretation of "full restitution," based solely on the dictionary definition of "full," might be more persuasive if no better definition of "full restitution," or if no "textual clues" as to its meaning, could be found elsewhere. However, MCL 780.766 does provide such textual clues.

4

limiting language, indicating in traditional statutory terms that a court must examine only the provisions contained in MCL 780.766 in order to ascertain the amount of restitution to which a crime victim is entitled-- and indeed what constitutes for purposes of the statute "full restitution."[3] Had the Legislature intended to give sentencing courts the unrestricted discretion to award other forms of restitution in addition to those identified in MCL 780.766, it would more reasonably have stated in MCL 780.766(2) that a court shall order restitution "including, but not limited to," the restitution required "under this section," just as it used virtually identical language, "include, but are not limited to," elsewhere in the very same statute. See MCL 780.766(8). In short, "full restitution" once again must be understood in the context of the language surrounding the term, as all statutory language must be read within its particular context. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) ("Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context. 'In seeking meaning, words and clauses will not be divorced from those which precede and those which follow.' ") (citations omitted).

---

[3] The majority asserts that MCL 780.766(2) "makes it clear that courts must order 'full restitution' even in certain cases in which the defendant has not been convicted of a crime. It does not state that sentencing courts may order only the specific restitution described in Subsections (3), (4), and (5)." I agree that the Legislature has required that all such defendants must make "full restitution," not just those who have been convicted of a crime. Nonetheless, the conclusion drawn by the majority that this language authorizes travel expenses is incompatible, for all the reasons set forth in this opinion, with the succeeding sentence in the statute, stating that such defendants must pay "the restitution *required under this section*." MCL 780.766(2) (emphasis added).

5

Third, the fact that the Legislature separated the statutorily required restitution into distinct subsections based on the specific type of injury sustained suggests that "full restitution" is given meaning in part by these applicable subsections. By specifying that some forms of restitution must be awarded for a crime resulting in property injury in MCL 780.766(3), while other forms must be awarded for a crime resulting in psychological or physical injury in MCL 780.766(4) and (5), the Legislature has indicated that a sentencing court cannot award *whatever* restitution it believes in its own discretion is necessary to "fully" compensate a victim, but must instead look to the relevant subsection to award the particular restitution contained in *that* provision.[4] If "full restitution" refers simply to restitution that is "complete" or "maximal," the Legislature would not have limited the restitution articulated in each subsection to those victims who sustained the applicable injury; instead, any victim who incurred such injury would have been entitled to restitution for a loss of the particular type. For example, MCL 780.766(4)(c) requires a defendant to reimburse a victim for income loss suffered as a result of a physical or psychological injury. A crime victim who sustains only property injury might also suffer income loss if he or she misses a day of work as a result of circumstances attending the aftermath of the crime, but would not be entitled to relief for that income loss because MCL 780.766(3) does not provide for such restitution. In short, if "full restitution" means nothing more than fully compensating a victim for his or

---

[4] Of course, if a crime results in both property injury and physical or psychological injury, the crime victim would seem to be entitled to the restitution articulated in both applicable subsections of MCL 780.766.

6

her loss, then the Legislature need not have carved out separate subsections pertaining to different injuries and then listed specific and distinct forms of restitution in each subsection.

Fourth, the applicable law itself clearly instructs sentencing courts as to the method of calculating restitution when there is "damage to or loss or destruction of property of a victim" or the "seizure or impoundment of property of a victim," as in this case. MCL 780.766(3). MCL 780.766(3) states "the order of restitution *shall* require that the defendant do 1 or more of the following [as set forth in Subdivisions (a) through (c)][.]" These forms of relief include return of the property, payment of an amount equal to the fair market value of the property, and payment of the costs of the seizure or impoundment, or both. Given that the Legislature has provided sentencing courts with specific instructions as to how to calculate the restitution award when a crime resulting in property injury is at issue, it would seem that "full restitution" for those crimes is best defined by the applicable subsection. Nowhere do these subsections provide for the restitution of travel expenses, nor does MCL 780.766 anywhere else provide for the restitution of travel expenses in addition to the restitution provided for in these subsections. The Legislature has expressly provided for the restitution of travel expenses in other provisions of MCL 780.766, but, for whatever reasons, did not do the same in MCL 780.766(3). Furthermore, if "full restitution" for a property injury was to have a more extensive meaning than the aggregation of the restitution provided for in MCL 780.766(3), there would have been little need in the first place for a statement of the measures of compensation provided for in this provision. See *Omelenchuk v City of*

7

*Warren*, 466 Mich 524, 528; 647 NW2d 493 (2002) (stating that statutes should not be construed in a manner that renders any part of them nugatory).

The majority opinion asserts that Subsections (3)(a) through (c) do not contain an "exhaustive list of all types of restitution available under Michigan law for victims who suffer property damage or loss," but are "complementary to the broad mandate for complete restitution set out in [the prior subsection]," meaning that travel expenses may be awarded in addition to the restitution articulated in the subsections. Although in isolation, this interpretation of Subsections (3)(a) through (c) might not be unreasonable, given the specificity with which the Legislature has set forth the restitution available for a property injury in these provisions, one might well expect the Legislature to have also identified travel expenses had it intended for those expenses to be reimbursable, particularly considering that most crimes resulting in property injury likely require that the victim travel somewhere in order to *recover* the property that was the object of the crime; the property must typically be recovered from either court or police storage in order to be returned to its location before the crime. While travel expenses concededly are slightly more indirect, and less inextricable, from a property crime than the expenses set forth in Subsections (3)(a) through (c), the Legislature nonetheless would seemingly have included those expenses in MCL 780.766(3), given its apparent intention to enumerate victims' expenses that are routinely characteristic of a property crime. In short, the specificity of Subsections (3)(a) through (c), and the absence of a provision

8

authorizing restitution of travel expenses, is at least one more relevant textual clue that travel expenses were not meant to be recoverable.[5]

Fifth, the law itself *expressly* provides for the restitution of travel expenses in two specific situations. MCL 780.766(8) permits courts to award restitution to a *third party* who has provided transportation services to a crime victim as a result of a crime, and MCL 780.766(24)(c) permits courts to award a *parent* restitution of mileage expenses incurred as a result of a crime in which his or her minor child was a victim. The Legislature's authorization of travel expenses in these very specific situations further implies that such restitution is available *only* under those circumstances, and is not

---

[5] The majority asserts that its "conclusion that Subsections (3) to (5) are not exhaustive is also consistent with the CVRA's definition of 'victim' for purposes of restitution, which includes those who suffer financial harm as the result of the commission of a crime" because "[n]ot all crime victims suffer property damage, personal injury, or death," but many otherwise unharmed victims incur financial harm while traveling to "reclaim property, identify perpetrators, or otherwise participate in the investigatory process in the aftermath of a crime." According to the majority, if Subsections (3) to (5) excluded those losses, "we would not give effect to the connection that the Legislature made between the financial harm that a person suffers and that person's status as a victim within the provisions of the CVRA." However, while MCL 780.766(1) *does* state that a person who sustains financial harm is a "victim" for purposes of the CVRA, it does not follow that such "victims" are entitled to restitution for whatever financial harm that they have incurred. Rather, MCL 780.766(1) identifies which individuals constitute "victims," and later subsections identify the restitution that is available to those "victims." Interpreting MCL 780.766(1) otherwise would seemingly entitle a victim to restitution for any financial harm incurred, whatever its nature. This could not have been the Legislature's intent, particularly considering that certain types of "financial loss," such as wage loss, are explicitly *included* in MCL 780.766(4), but *omitted* from MCL 780.766(3). Further, because those who suffer a property injury may incur financial harm without an accompanying "physical or emotional harm," the reference in MCL 780.766(1) to "financial harm" serves the purpose of ensuring that these individuals are nonetheless considered "victims" and entitled to restitution under the CVRA. Thus, our interpretation of Subsections (3) to (5) does indeed "give effect" to the Legislature's conclusion that a "victim" for purposes of the CVRA includes one who has suffered "financial harm."

available under other circumstances or to other persons. In other words, pursuant to the maxim *expressio unius est exclusio alterius*, the express mention of restitution of travel expenses for certain individuals implies the exclusion of restitution of travel expenses for other individuals. *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997) ("[T]he express mention in a statute of one thing implies the exclusion of other similar things."). The Legislature has demonstrated that it clearly knows how to provide for the restitution of travel expenses, but has simply chosen not to do so with regard to the victims themselves, again for reasons that are not altogether clear.[6] However, the lack of a clear rationale or the uncertain wisdom of the outcome cannot require the importation of words into the statute that are not there.[7]

Sixth, while MCL 780.766 articulates the restitution available to victims of the majority of crimes, MCL 780.766b, added by 2010 PA 364 and effective April 1, 2011, expressly provides more extensive restitution to victims of a narrower group of crimes, human trafficking, described in Chapter LXVIIA of the Michigan Penal Code:

---

[6] Additionally, MCL 780.766(24)(f) permits a parent to recover "[a]ny other cost incurred in exercising the rights of the victim or a parent under this act." This reference to "any other cost" seemingly permits restitution of expenses that are not explicitly provided for in MCL 780.766. While MCL 780.766(24)(f) pertains to the restitution available to a parent, not a victim, the Legislature could also have employed this same language elsewhere in MCL 780.766 to permit a victim to recover "any other cost incurred" in exercising his or her rights, but it did not do so.

[7] Perhaps the Legislature did not wish to require sentencing courts to ascertain the amount of restitution for what will typically constitute a minor expense, but desired nonetheless to encourage third parties to assist victims even at the cost of having to ascertain those amounts. Regardless, even though this Court might have done things differently, the Legislature did not act beyond its authority in providing restitution to certain third parties, but not to other persons.

10

When sentencing a defendant convicted of an offense described in chapter LXVIIA of the Michigan Penal Code, 1931 PA 328, MCL 750.462a to 750.462i, the court shall order restitution for the full amount of the loss suffered by the victim. In addition to restitution ordered under [MCL 780.766], the court may order the defendant to pay all of the following:

(a) Lost income, calculated by whichever of the following methods [listed in Subdivision (a)(*i*) through (*iii*)] results in the largest amount . . . .

(b) The *cost of transportation*, temporary housing, and child care expenses incurred by the victim because of the offense.

(c) Attorney fees and other costs and expenses incurred by the victim because of the offense, including, but not limited to, *costs and expenses relating to assisting the investigation of the offense and for attendance at related court proceedings* as follows:

(*i*) Wages lost.

(*ii*) Child care.

(*iii*) *Transportation.*

(*iv*) *Parking.*

(d) Any other loss suffered by the victim as a proximate result of the offense. [Emphasis added.]

Thus, MCL 780.766b specifically states that for victims of a highly limited and specifically delineated group of crimes, the court may order "[*i*]*n addition to* restitution ordered under [MCL 780.766]" the "cost of transportation . . . incurred by the victim because of the offense," MCL 780.766b(b), as well as the "costs and expenses relating to assisting the investigation of the offense and for attendance at related court proceedings," including those incurred for both "transportation" and "parking," MCL 780.766b(c)(*iii*) and (*iv*). Two statutes that relate to the same subject or share a common purpose are considered *in pari materia*, or sufficiently related to one another that they should be read

11

together as a single proposition of law, even if they were enacted at different times. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). The goal of this interpretive rule is to give effect to the legislative purpose of harmonious and complementary statutes, and when such statutes lend themselves to a single construction that avoids conflict or tension, that construction should control. *Id*. MCL 780.766 and MCL 780.766b are both contained in the CVRA, and both clearly pertain to the same subject-- victim restitution-- and should therefore be read together in a manner that avoids conflict or tension. Accordingly, the Legislature's *express* inclusion of certain travel expenses in MCL 780.766b strongly intimates, and constitutes a powerful textual clue, that the omission of those expenses from MCL 780.766 was significant and purposeful. This Court simply "cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). This is particularly clear given the Legislature's use of the language "[i]n addition to restitution ordered under [MCL 780.766]" in enacting MCL 780.766b. If the very travel expenses that the victim seeks must be provided for "*in addition to*" the restitution ordered under MCL 780.766, then the only reasonable and logical conclusion is that such restitution is not encompassed within MCL 780.766.[8] Moreover, MCL 780.766b(d)

---

[8] The majority contends that because "MCL 780.766b(c)(*i*) and (*ii*) authorize courts to order restitution for lost wages and child-care expenses in human-trafficking cases, [and because] those same expenses were already authorized under MCL 780.766(4)(c) and (e) for *any* crime that causes physical or psychological injury," the Legislature was not "expanding the restitution authority of sentencing courts in MCL 780.766b," but was only "ensuring that sentencing courts did not overlook types of losses that were likely to be common in the human-trafficking context." In providing for the restitution of

12

permits restitution for "[a]ny other loss suffered by the victim as a proximate result of the offense." MCL 780.766 again does not contain a similar provision, further intimating that the Legislature has purposefully provided more extensive restitution (again for whatever reason) to a particular group of victims and that such restitution is not similarly available under the general restitution provision, MCL 780.766. This notwithstanding that *all* losses suffered by a victim "as a proximate result of the offense" could with no difficulty at all be viewed as fitting within the meaning of "full restitution," a term viewed as dispositive of this case by the majority.

These statutory provisions, or "textual clues," reasonably compel the conclusion that sentencing courts may not award restitution to crime victims for travel expenses because there is simply no apparent statutory authority allowing the result reached by the majority. It is not within this Court's authority-- the exercising of the "judicial power"-- to contravene this determination. The majority places great emphasis on the Legislature's use of the phrase "full restitution," but at the same time recognizes that

---

"[a]ttorney fees and other costs and expenses incurred by the victim because of the offense," MCL 780.766b(c), the majority argues, encompasses restitution also provided for in MCL 780.766(4)(c) and (e). However, MCL 780.766b(c) then proceeds to authorize restitution for lost wages and child-care expenses specifically related to "assisting the investigation of the offense" or the "attendance at related court proceedings," expenses that are *not* provided for in MCL 780.766(4)(c) and (e). By authorizing restitution for the latter expenses, MCL 780.766b(c) does "expand[] the restitution authority," and it is understandable that the Legislature would again refer to restitution of wage loss and child-care expenses to avoid the implication that these are no longer covered under that provision. Further, even assuming that there is some overlap between the wage loss and child-care expenses set forth in MCL 780.766(4) and MCL 780.766b(c), the same cannot be said for travel expenses, as such expenses are nowhere provided for in MCL 780.766. By providing restitution additional to that provided for in the general statute, the more specific statute does not merely reiterate types of restitution in order that these not be "overlooked," but expands the realm of restitution.

13

there are limits on the types of losses that may be included in a restitution order because "the losses included in a restitution order must be the result of defendant's criminal course of conduct.[9] While such a standard might be desirable, albeit potentially difficult of application in individual cases, this is simply not the test that the Legislature has adopted.[10] Rather, it has chosen to take the legislative course of defining with greater specificity what is encompassed by the general concept of "full restitution."[11]

Finally, the majority notes the fact that a crime victim's right to restitution is now guaranteed by Article 1, § 24 of Michigan's Constitution, whereas it was discretionary in

---

[9] The majority's interpretation of "full restitution" presumably encompasses not only travel expenses, but also any other expenses that could be understood to comprise "full restitution" as long as the relevant losses are "the result of defendant's criminal course of conduct."

[10] For example, if a victim suffers income loss due to the absence of the property that was the subject of the crime, is that income loss reimbursable as the "result" of the criminal course of conduct? If a victim feels compelled to purchase a new security system after experiencing a break-in, is that purchase reimbursable as the "result" of the criminal course of conduct?

[11] Had the Legislature desired to simply provide restitution for the losses that are "the result of defendant's criminal course of conduct," it likely would have done so in the context of *nonproperty* crimes, as it is undoubtedly a more difficult task to ascertain the amount of restitution needed to reimburse a victim for a physical or psychological injury than it is to ascertain the amount of restitution needed to reimburse a victim for the loss of his or her property. However, even for these nonproperty crimes, the Legislature explicitly provided standards in MCL 780.766(4) by which courts are to calculate the applicable restitution award. See MCL 780.766(4)(a) (stating that if a crime results in physical or psychological injury to a victim, the defendant shall "[p]ay an amount equal to the reasonably determined cost of medical and related professional services and devices actually incurred and reasonably expected to be incurred relating to physical and psychological care"). Had the Legislature genuinely intended for "full restitution" to refer only to restitution that "fully" compensates a victim for his or her losses, it seemingly would not have made an effort to articulate the restitution available for especially difficult-to-value nonproperty crimes.

14

nature before this amendment in 1988. However, the gravamen of the instant appeal has nothing to do with the *mandatory character of restitution*, but addresses only what *comprises the restitution* that may properly be awarded to crime victims and others in a mandatory restitution order. Article 1, § 24 qualifies victims' constitutional right to restitution with the phrase "[t]he Legislature may provide by law for the enforcement of this section." Const 1963, art 1, § 24(2). In light of this authorization, and in light of the fact that the Legislature has "accepted" the Constitution's invitation to enact such a law, it is evident that the precise scope of the right to restitution in this case is to be found in the work product of the Legislature.

The "textual clues" provided by the CVRA compellingly indicate that a court may not order a defendant to pay restitution for the travel expenses that a crime victim incurs in the course of traveling to recover property or attend a restitution hearing.

CONCLUSION

In summary, the relevant parts of the restitution statute, MCL 780.766, state as follows:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make *full restitution* to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. For an offense that is resolved by assignment of the defendant to youthful trainee status, by a delayed sentence or deferred judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall order the restitution required under this section.

> (3) If a crime results in damage to or loss or destruction of property of a victim of the crime or results in the seizure or impoundment of property of a victim of the crime, the order of restitution shall require that the defendant do 1 or more of the following, as applicable:

(a) Return the property to the owner of the property or to a person designated by the owner.

(b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:

(*i*) The fair market value of the property on the date of the damage, loss, or destruction. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

(*ii*) The fair market value of the property on the date of sentencing. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

(c) Pay the costs of the seizure or impoundment, or both.

(4) If a crime results in physical or psychological injury to a victim, the order of restitution shall require that the defendant do 1 or more of the following, as applicable:

(a) Pay an amount equal to the reasonably determined cost of medical and related professional services and devices actually incurred and reasonably expected to be incurred relating to physical and psychological care.

(b) Pay an amount equal to the reasonably determined cost of physical and occupational therapy and rehabilitation actually incurred and reasonably expected to be incurred.

(c) Reimburse the victim or the victim's estate for after-tax income loss suffered by the victim as a result of the crime.

(d) Pay an amount equal to the reasonably determined cost of psychological and medical treatment for members of the victim's family actually incurred and reasonably expected to be incurred as a result of the crime.

(e) Pay an amount equal to the reasonably determined costs of homemaking and child care expenses actually incurred and reasonably expected to be incurred as a result of the crime or, if homemaking or child care is provided without compensation by a relative, friend, or any other person, an amount equal to the costs that would reasonably be incurred as a result of the crime for that homemaking and child care, based on the rates in the area for comparable services.

(f) Pay an amount equal to the cost of actual funeral and related services.

(g) If the deceased victim could be claimed as a dependent by his or her parent or guardian on the parent's or guardian's federal, state, or local income tax returns, pay an amount equal to the loss of the tax deduction or tax credit. The amount of reimbursement shall be estimated for each year the victim could reasonably be claimed as a dependent.

(h) Pay an amount equal to income actually lost by the spouse, parent, sibling, child, or grandparent of the victim because the family member left his or her employment, temporarily or permanently, to care for the victim because of the injury.

(5) If a crime resulting in bodily injury also results in the death of a victim or serious impairment of a body function of a victim, the court may order up to 3 times the amount of restitution otherwise allowed under this section. As used in this subsection, "serious impairment of a body function of a victim" includes, but is not limited to, 1 or more of the following:

(a) Loss of a limb or use of a limb.

(b) Loss of a hand or foot or use of a hand or foot.

(c) Loss of an eye or use of an eye or ear.

(d) Loss or substantial impairment of a bodily function.

(e) Serious visible disfigurement.

(f) A comatose state that lasts for more than 3 days.

(g) Measurable brain damage or mental impairment.

(h) A skull fracture or other serious bone fracture.

(i) Subdural hemorrhage or subdural hematoma.

(j) Loss of a body organ.

\* \* \*

(8) The court shall order restitution to the crime victim services commission or to any individuals, partnerships, corporations, associations, governmental entities, or other legal entities that have compensated the victim or the victim's estate for a loss incurred by the victim to the extent of the compensation paid for that loss.  The court shall also order restitution for the costs of services provided to persons or entities that have provided services to the victim as a result of the crime.  Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. . . .

\* \* \*

(24) If the victim is a minor, the order of restitution shall require the defendant to pay to a parent of the victim an amount that is determined to be reasonable for any of the following that are actually incurred or reasonably expected to be incurred by the parent as a result of the crime:

(a) Homemaking and child care expenses.

(b) Income loss not ordered to be paid under subsection (4)(h).

(c) Mileage.

(d) Lodging or housing.

(e) Meals.

(f) Any other cost incurred in exercising the rights of the victim or a parent under this act.  [Emphasis added.]

The majority opinion concludes that-- all legislative detail, nuance and precision of language, and specific recitations of coverage and noncoverage notwithstanding-- this statute simply means that "full restitution" must be awarded.  Why in light of this

18

conclusion the Legislature proceeded to waste its breath on an additional 1006 relevant words in this statute, I do not know.  Although the majority opinion may set forth a worthy public policy, it is not one, I am quite certain, actually enacted by our Legislature. Accordingly, I would affirm the judgment of the Court of Appeals.

Stephen J. Markman
Bridget M. McCormack
