# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v NEILLY

Docket No. 165185. Argued on application for leave to appeal March 14, 2024. Decided July 8, 2024.

In 1993, William E. Neilly was convicted by a jury in the Kalamazoo Circuit Court of first-degree felony murder, felon in possession of a firearm during the commission of a felony, and conspiracy to commit armed robbery. Defendant was 17 years old when he and multiple codefendants attempted to rob the victim while armed, resulting in the victim's death. The court, Richard Ryan Lamb, J., sentenced defendant to the then-mandatory term of life imprisonment without parole (LWOP); the judgment of sentence did not include an order of restitution. The United States Supreme Court subsequently held in *Miller v Alabama*, 567 US 460 (2012), and *Montgomery v Louisiana*, 577 US 190 (2016), that mandatory LWOP sentences for defendants who committed crimes when under the age of 18 years old are unconstitutional and that the new rule applied retroactively; as a result, defendant was entitled to be resentenced as outlined by the Legislature in MCL 769.25a. On resentencing, the court, Pamela L. Lightvoet, J., sentenced defendant to 35 to 60 years in prison instead of LWOP. The trial court also ordered defendant to pay $14,895.78 in restitution to the victim's family for funeral expenses; the restitution was joint and several with his codefendants. Defendant appealed the restitution order, arguing that it violated the Ex Post Facto Clauses of the United States and Michigan Constitutions, US Const, art I, § 10; Const 1963, art 1, § 10, because the trial court ordered restitution under the current restitution statutes—MCL 780.766(2) of the Crime Victim's Rights Act, MCL 780.751 *et seq.*; and MCL 769.1a(2), the general restitution statute—rather than the former restitution statutes in effect when he was originally sentenced for the convictions in 1993—MCL 780.766(2), as amended by 1988 PA 21, and MCL 769.1a(1), as amended by 1985 PA 89. In an unpublished per curiam opinion issued on November 10, 2022 (Docket No. 359043), the Court of Appeals, SAWYER, P.J., and MARKEY and SWARTZLE, JJ., rejected defendant's argument, reasoning that because restitution is a civil remedy and not punishment, its imposition did not result in an increase in punishment in violation of the Ex Post Facto Clauses. Defendant sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 511 Mich 978 (2023).

In a unanimous opinion by Chief Justice CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

Restitution imposed under MCL 780.766 and MCL 769.1a is a civil remedy, not a criminal punishment. Because restitution is a civil remedy, application of the restitution statutes to defendants whose criminal acts predate enactment of the restitution statutes does not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions. When defendant was resentenced following the *Miller* and *Montgomery* decisions, the trial court ordered restitution under the current restitution statutes instead of those in effect when defendant was originally convicted. Because restitution imposed under the current statutes is not a criminal punishment, the trial court's application of those statutes to defendant during resentencing did not violate ex post facto prohibitions. Accordingly, the trial court's restitution order was affirmed.

1. Article 1, § 24(1) of Michigan's 1963 Constitution provides that crime victims shall have the right to restitution as provided by law. Defendant was originally sentenced under the former restitution statutes, which stated that the imposition of restitution was *discretionary*, not mandatory; when imposing restitution under those statutes, courts merely had to consider the amount of loss sustained by a victim while also considering the defendant's financial resources and earning ability, as well as the defendant's needs and those of the defendant's dependents. In contrast, the current restitution statutes, MCL 780.766 and MCL 769.1a, both provide that the imposition of restitution is mandatory—specifically that a trial court "*shall order*" a defendant to make full restitution to any victim of the defendant's course of conduct. Further, a trial court is required only to consider the amount of loss sustained by a victim in determining whether to award restitution; there is no requirement that a court consider the defendant's financial resources. Current MCL 769.1a(5) and MCL 780.766(4)(f) specifically allow for the inclusion of the payment of funeral costs in a trial court's restitution order.

2. The Ex Post Facto Clauses of the United States and Michigan Constitutions prohibit the respective governments from passing ex post facto laws. The Ex Post Facto Clauses forbid the retroactive application of a law if the law does any of the following: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence. Relevant here, defendant argued that the trial court's award of restitution under the current statutes violated the Ex Post Facto Clauses because application of the statutes increased the punishment for his crimes. To successfully challenge application of a statute on the basis that it increases the punishment for a crime, a defendant must first prove that the statute imposes a criminal punishment rather that a civil remedy. To make this determination, a court must first consider whether the Legislature intended the statute as a criminal punishment or as a civil remedy. There is no further inquiry if the Legislature intended the statute to be a criminal punishment because retroactive application of the statute would violate ex post facto prohibitions. If a statute imposes a disability to reprimand the wrongdoer, it is likely that the Legislature intended it to be criminal punishment. In contrast, if a statute imposes a disability to further a legitimate governmental purpose, the Legislature likely intended the statute as a civil remedy. If a court determines that the Legislature intended the statute to be a civil remedy, the court must then consider whether the statutory scheme is so punitive either in purpose or effect that it negates the state's intention to deem it civil. To address this question, Michigan courts consider the nonexhaustive factors set forth in *Kennedy v Mendoza-Martinez*, 372 US 144 (1963): (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether the sanction comes into play only on a finding of scienter, (4) whether its operation will promote the traditional

aims of punishment—i.e., retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned. In making this determination, a party challenging the statute must provide the clearest proof that the statutory scheme is so punitive either in purpose or effect that it negates the state's intent to deem it civil.

3. Given this legal framework, the Court first considered whether the Legislature intended the restitution statutes as a criminal punishment or as a civil remedy. Although MCL 769.1a and MCL 780.766 do not expressly characterize restitution as a criminal punishment or a civil remedy, the purpose of restitution is to enable victims to be compensated fairly for their suffering rather than to impose additional punishment on offenders; in fact, the statutes effectively shift the burden of losses arising from criminal conduct from the crime victim to the perpetrators of the crimes, making the statutes remedial in nature. The fact that an order of restitution imposes some financial pain on defendants to effectuate this goal does not render restitution penal because the focus of the current restitution statutes is squarely on the victims' losses rather than on further punishment of the defendants. Because of this, two defendants who have committed a crime of the same severity may be ordered to pay restitution in wholly different amounts because of the differences in actual costs to their victims. While the word "penalty" is used in both MCL 769.1a(2) and MCL 780.766(2)—i.e., directing a trial court to order restitution "in addition to or in lieu of any *other* penalty authorized by law"—the Legislature's characterization of restitution as a "penalty" is not dispositive of whether the Legislature intended restitution to be a civil remedy or a criminal punishment. Instead, because compensating victims for the actual costs of their suffering was the Legislature's goal in enacting the restitution statutes, and because, standing alone, the Legislature's characterization of restitution as a "penalty" is not sufficient to find that the Legislature intended the statutes to be criminal punishment, the Legislature intended the statutes to create a civil remedy. Given that the restitution statutes impose a civil remedy, it was necessary to consider the *Mendoza-Martinez* factors to determine whether the statutory scheme is so punitive either in purpose or effect as to negate the Legislature's intention to deem it civil. In that regard, restitution has historically been considered an equitable, remedial measure designed to prevent the unjust enrichment of wrongdoers; contrary to defendant's argument, restitution is not analogous to criminal fines. Although the restitution statutes impose some affirmative disability or restraint— specifically, by requiring restitution as a condition of parole or probation, and the trial court or parole board may revoke a defendant's probation or parole if the defendant does not comply with the restitution order—the punitive effect is somewhat lessened by the statutory protections that significantly narrow the circumstances in which imprisonment may be imposed. Indeed, while the restitution statutes overall involve an affirmative disability or restraint, the protections afforded to defendants in the statutes and the indirect nature of the disability or restraint minimize the resultant punitive effect. Consideration of two factors—whether the restitution statutes come into play only on a finding of scienter, and whether the behavior to which the restitution statutes apply is already a crime—are generally unhelpful and carry minimal weight because the sanction of restitution always involves a crime and nearly always requires a finding of scienter. Operation of the restitution statutes does not promote the traditional aims of punishment, i.e., retribution and deterrence, because of the other potential consequence of criminal punishment such as fines and incarceration—particularly, the severity of the defendant's crimes outside the limited perspective of what harm they caused. Importantly, the restitution statutes have a rational connection to a

nonpunitive purpose: compensating victims for losses suffered as a result of the defendant's crimes. Finally, the restitution statutes are not applied excessively because restitution orders are linked to the amount of provable damages suffered or expected to be suffered by a limited class of victims and the amount is tailored to the specific injury caused by the specific defendant. Additional statutory provisions ensure that the statutes are not unduly severe. Relevant to this analysis, although the current restitution statutes no longer require a trial court to consider a defendant's ability to pay when setting the restitution amount, the ability to pay is considered when deciding whether a defendant's probation or parole should be revoked because of a failure to pay. Therefore, taken as a whole, while the imposition of the current restitution statutes has some punitive effect, that effect is not sufficient to overcome the demonstrated legislative intent that restitution is a civil remedy. Because restitution imposed under MCL 780.766 and MCL 769.1a is a civil remedy, not a criminal punishment, application of the restitution statutes to defendants whose criminal acts predate enactment of the restitution statutes does not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions. Accordingly, the trial court's order directing defendant to pay restitution under the current statutes did not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions because the order did not constitute a retroactive increase in punishment.

Affirmed.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 8, 2024

S T A T E O F M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                 No. 165185

WILLIAM EDWARD NEILLY,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CLEMENT, C.J.

At issue in this case is whether the trial court violated federal and state constitutional prohibitions on ex post facto laws when, during defendant's resentencing proceedings, it ordered defendant to pay restitution pursuant to the current restitution statutes rather than the statutes in effect at the time of defendant's crimes. We hold that because restitution imposed under the current statutes does not constitute punishment, no such violation occurred here.

## I. FACTS & PROCEDURAL HISTORY

The factual background of this case is not in issue. Briefly—in 1993, when defendant, William E. Neilly, was 17 years old, he participated with multiple codefendants in an attempted armed robbery that resulted in the killing of 17-year-old Christopher Ricketts. As a result of his involvement, defendant was convicted of first-degree felony murder, conspiracy to commit armed robbery, and two counts of felony-firearm. The trial court sentenced him to the then-mandatory term of life imprisonment without parole (LWOP). The trial court did not order restitution.

Years later, the United States Supreme Court decided *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016), which determined that mandatory LWOP sentences for defendants under 18 years old are unconstitutional and that this new rule applied retroactively. In response, the Michigan Legislature created a statutory procedure to handle the resentencing of persons like defendant who had already been sentenced to such a mandatory LWOP term. See MCL 769.25a.

On resentencing, the prosecutor declined to seek the reimposition of LWOP and instead agreed to a term-of-years sentence of 35 to 60 years' imprisonment. The victim's mother also requested that defendant pay restitution in the amount of $14,895.78 to compensate the victim's family for funeral expenses. The trial court ultimately imposed the agreed-upon sentence and ordered defendant to pay the requested restitution "joint and several with co-defendants."[1]

---

[1] The codefendants' original judgments of sentence, like defendant's, did not include any restitution order. The codefendants have not received a *Miller* resentencing hearing like defendant, and there is no indication that they have received resentencing hearings for any

2

Defendant appealed the restitution order in the Court of Appeals, arguing that it violated the Ex Post Facto Clauses of the United States and Michigan Constitutions. *People v Neilly*, unpublished per curiam opinion of the Court of Appeals, issued November 10, 2022 (Docket No. 358043). Specifically, defendant argued that because restitution was ordered under the current restitution statutes rather than the previous version of the restitution statutes that were in effect when he committed his crimes, the trial court had improperly increased the punishment for his crimes. Among other differences, the former restitution statutes provided that the imposition of restitution was discretionary, rather than mandatory, as the restitution statutes now provide. Compare MCL 780.766(2), as amended by 1988 PA 21 (providing that the trial court "may order" restitution), and MCL 769.1a(1), as amended by 1985 PA 89 (providing that the trial court "may order" restitution), with current MCL 780.766(2) (providing that the trial court "shall order" restitution), and current MCL 769.1a(2) (providing that the trial court "shall order" restitution). The Court of Appeals rejected this argument and affirmed defendant's sentence, reasoning that because restitution is a civil remedy and not punishment, its imposition did not result in an increase in punishment and violate the Ex Post Facto Clauses. *Neilly*, unpub op at 3-5.

Defendant sought leave to appeal in this Court, and in lieu of granting the application, this Court directed oral argument as to

> (1) whether restitution constitutes punishment for purposes of the Ex Post Facto Clauses of the United States Constitution, US Const, art I, § 10, and the Michigan Constitution, Const 1963, art 1, § 10; (2) whether application of the current versions of the restitution statutes rather than the statutes in effect when the defendant was convicted "disadvantage[d]" him for purposes

other reason. Accordingly, defendant is currently the only responsible party whose judgment of sentence includes a restitution order.

3

of the Ex Post Facto Clauses, *Weaver v Graham*, 450 US 24, 29 (1981); see also *People v Lueth*, 253 Mich App 670, 693 (2002); and (3) if there is an Ex Post Facto Clause violation, what is the appropriate remedy? [*People v Neilly*, 511 Mich 978 (2023) (alteration in original).]

## II. LEGAL BACKGROUND

This Court reviews for an abuse of discretion a trial court's restitution order. *In re McEvoy*, 267 Mich App 55, 59; 704 NW2d 78 (2005). To the extent that the question of restitution involves statutory interpretation and questions of law, our review is de novo. *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).

The Michigan Constitution provides that "[c]rime victims . . . shall have" the right to restitution, "as provided by law[.]" 1963 Const, art 1, § 24(1). See also 1963 Const, art 1, § 24(2) (stating that the Legislature "may provide by law for the enforcement of this section"). Both MCL 780.766, enacted as a portion of the Crime Victim's Rights Act (CVRA),[2] and MCL 769.1a, the "general restitution statute," govern the award of restitution in Michigan. *People v Garrison*, 495 Mich 362, 367; 852 NW2d 45 (2014). Both statutes currently provide that a sentencing court "shall order" a defendant to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction . . . ." MCL 769.1a(2); MCL 780.766(2).[3] Where a victim has been killed as a result of the defendant's actions, both statutes specifically provide for the inclusion of payment of funeral costs in the trial court's restitution order. See MCL 769.1a(5); MCL

---

[2] MCL 780.751 *et seq*.

[3] Victims include any "individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission" of the crime. MCL 769.1a(1)(b); MCL 780.766(1).

4

780.766(4)(f).[4] Further, MCL 780.767(1) provides that, "[i]n determining the amount of restitution to order under [MCL 780.766], the court shall consider the amount of the loss sustained by any victim as a result of the offense."

These current restitution statutes are less favorable to defendants than previous versions that were in effect at the time of defendant's crimes. As stated earlier, the former restitution statutes provided that the imposition of restitution was discretionary, rather than mandatory. Further, while current MCL 780.767(1) provides only that the court shall consider the amount of loss sustained by a victim in determining whether to award restitution, former MCL 780.767(1), as amended by 1985 PA 87, required the trial court to also consider "the financial resources and earning ability of the defendant, the financial needs of the defendant and the defendant's dependents, and such other factors as the court considers appropriate."

Defendant argues that the trial court's use of the current statutes at his resentencing has increased his punishment in violation of the Ex Post Facto Clauses of the Michigan and United States Constitutions. See US Const, art I, § 10 (providing that "no state shall . . . pass any . . . ex post facto Law"); Const 1963, art 1, § 10 (providing that "no . . . ex post facto law . . . shall be enacted").[5] The Ex Post Facto Clauses forbid "the

---

[4] More specifically, MCL 769.1a(5) provides that the trial court "may require" that the defendant pay the "cost of actual funeral and related services." MCL 780.766(4), on the other hand, provides that when a victim is injured, the trial court "shall require" that the defendant pay one or more, as applicable, of the enumerated costs and losses, of which the payment of funeral costs is one.

[5] Because the language of these constitutional provisions is substantially similar and because we see no reason to do otherwise in this case, we interpret these constitutional

5

retroactive application of a law if the law: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014).

At issue here is the third type of a violation of ex post facto provisions, i.e., when a law allegedly increases the punishment for a crime. To successfully challenge a statute's application on this ground, a defendant must first prove that the statute imposes a criminal punishment rather than a civil remedy. See *People v Betts*, 507 Mich 527, 542-543; 968 NW2d 497 (2021). The analysis regarding whether a statute imposes a criminal punishment is a two-step inquiry that begins with the question whether the Legislature intended the statute as a criminal punishment or as a civil remedy. *Id*. at 542. If the Legislature intended the statute to be a criminal punishment, there is no further inquiry because retroactive application of the statute would violate ex post facto prohibitions. *Id*. at 543. However, if the Legislature intended the statute to be a civil remedy, the inquiry continues, *id*., and the reviewing court must then consider "whether the statutory scheme is so punitive either in purpose or effect so as to negate the State's intention to deem it civil," *Earl*, 495 Mich at 38 (quotation marks, citation, and brackets omitted). To aid in that analysis, this Court has adopted from the United States Supreme Court the following nonexhaustive factors to be considered (i.e., "the *Mendoza-Martinez* factors"):

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the

provisions coextensively. See *In re Certified Question*, 447 Mich 765, 776 & n 13; 527 NW2d 468 (1994).

6

traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned. [*Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963) (citations omitted). See also *Earl*, 495 Mich at 43-44.]

In considering these factors to determine whether a statute "has the purpose or effect of being punitive," *Earl*, 495 Mich at 44, the Legislature's manifest intent to create a civil regulation will be rejected only when "a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil," *Kansas v Hendricks*, 521 US 346, 361; 117 S Ct 2072; 138 L Ed 2d 501 (1997) (quotation marks, citation, and brackets omitted).

## III. APPLICATION

As stated, to determine whether restitution is punishment for purposes of the Ex Post Facto Clauses, this Court must first consider whether the Legislature intended restitution as a criminal punishment or as a civil remedy. *Betts*, 507 Mich at 542. If a statute imposes a disability for the purpose of reprimanding the wrongdoer, the Legislature likely intended the statute as criminal punishment. *Earl*, 495 Mich at 38-39. On the other hand, if a statute imposes a disability to further a legitimate governmental purpose, the Legislature likely intended the statute as a civil remedy. *Id*. at 39.

Neither MCL 769.1a nor MCL 780.766 expressly characterizes restitution as a criminal punishment or a civil remedy. However, this Court and others have previously recognized that the purpose of restitution is "to enable victims to be compensated fairly for their suffering at the hands of convicted offenders," rather than to impose additional punishment on offenders. *People v Peters*, 449 Mich 515, 526; 537 NW2d 160 (1995).

7

See also *People v Garrison*, 495 Mich 362, 368; 852 NW2d 45 (2014) ("The Legislature's statutory direction to order defendants to pay complete, entire, and maximum restitution effectuates this goal of fair compensation."); *People v Allen*, 295 Mich App 277, 282; 813 NW2d 806 (2012) ("[W]ith the [CVRA, which includes MCL 780.766,] the Legislature plainly intended to shift the burden of losses arising from criminal conduct—as much as practicable—from the crime victims to the perpetrators of the crimes; thus, it is remedial in character . . . .") (quotation marks and citation omitted); *United States v Arutunoff*, 1 F3d 1112, 1121 (CA 10, 1993) (noting that the purpose of a federal restitution statute "is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses"); *United States v Newman*, 144 F3d 531, 538 (CA 7, 1998) (reasoning that restitution "is separate and distinct from any punishment visited upon the wrongdoer and operates to ensure that a wrongdoer does not procure any benefit through his conduct at others' expense").

The fact that the imposition of restitution imposes some financial pain on defendants to effectuate this goal does not render restitution penal because the focus of the current restitution statutes remains "on the victims' losses" rather than on further punishment of the defendants. *People v Foster*, 319 Mich App 365, 389; 901 NW2d 127 (2017). See also *Peters*, 449 Mich at 526. Restitution under MCL 769.1a and MCL 780.766 is tailored to the harm suffered by the victim rather than the defendant's conviction or judgment of sentence. Specifically, a restitution award may require the defendant to pay the victim of the crime the fair market value of property damaged or destroyed, MCL 769.1a(3)(b), MCL 780.766(3)(b); the actual costs of medical services and devices, MCL 769.1a(4)(a), MCL 780.766(4)(a); the actual costs of physical and occupational therapy and rehabilitation,

MCL 769.1a(4)(b), MCL 780.766(4)(b); the actual after-tax income loss, MCL 769.1a(4)(c), MCL 780.766(4)(c); the actual psychological and medical treatment for the victim's family, MCL 769.1a(4)(d), MCL 780.766(4)(d); the actual cost of homemaking and child care expenses, MCL 769.1a(4)(e), MCL 780.766(4)(e); the actual costs of funeral services, MCL 769.1a(5), MCL 780.766(4)(f); the parent's or guardian's loss of a tax deduction or tax credit if the victim dies, MCL 780.766(4)(g); or actual income loss by the victim's spouse, parent, sibling, child, or grandparent if they left their employment to care for the victim, MCL 780.766(4)(h). These possibilities are all tied to definable, specific costs and losses suffered by the victims of a defendant's crimes. Accordingly, two defendants who have committed a crime of the same severity may be ordered to pay restitution in wholly different amounts because of the differences in actual costs to their victims. A defendant whose victim suffered serious psychological injury and who was the primary caretaker of a family will likely pay more in restitution than a defendant whose victim suffered only a minor injury, despite both defendants being convicted of the same offenses. Conversely, two defendants who have committed crimes of different severity may be ordered to pay restitution in a similar amount because their victims suffered similar actual costs despite the differing severity of the crimes.

The following example illustrates the point. One defendant attempts to shoot and kill the victim, but misses. The victim does not suffer physical injury but attends counseling for six weeks after the event. Another defendant throws a brick at a window of an unoccupied home. Although the first defendant has committed attempted murder and the second defendant has committed trespass, the restitution costs will be similar in both cases if the costs for the counseling and the window replacement are similar. That the

9

amount of restitution is not dependent on the severity of the crime demonstrates that the intent of the statutes is to provide a civil remedy for victims' injuries rather than to provide a criminal punishment for defendants.[6]

Despite this recognized purpose of restitution, defendant argues that the Legislature intended the restitution statutes as punishment because the statutes refer to restitution as a "penalty." Specifically, both MCL 769.1a(2) and MCL 780.766(2) provide that the trial court shall order restitution "in addition to or in lieu of any other penalty authorized by

---

[6] In reaching this conclusion, we find useful an analogy to California's two restitution statutes. One statute establishes what are referred to as "restitution fines," which are mandatory even in the absence of a victim, and the amount of fine imposed is determined by reference to the length of the defendant's term of imprisonment. *People v Hanson*, 23 Cal 4th 355, 362; 1 P3d 650 (2000). Because the focus of this restitution fine is on the defendant's crime and is not based on the actual harm suffered by the victim, the California courts recognize these restitution fines as criminal punishment. *Id*. On the other hand, the second restitution statute establishes what is referred to as "victim restitution," which is tailored to the specific harm caused to the victim and provides that the order "shall be enforceable as a civil judgment." *People v Harvest*, 84 Cal App 4th 641, 647; 101 Cal Rptr 2d 135 (2000) (quotation marks and citations omitted). Because the victim-restitution statute is focused on the losses suffered by the victim, the California courts recognize "victim restitution" as a civil remedy for which "subsequent enforcement efforts may occur outside the context of the criminal law." *Id*.

While MCL 769.1a and MCL 780.766 are not perfectly analogous to California's victim-restitution statute, they are undoubtedly more similar to that statute than to California's restitution-fines statute. Like California's victim-restitution statute, MCL 769.1a and MCL 780.766 do not require restitution in the absence of a victim; instead, the amount imposed is related to the amount of loss suffered or that will be suffered by the victim, and restitution orders are enforceable in the same manner as a civil judgment, MCL 780.766(13). These characteristics support the goal of compensating the victim. The characteristics of California's restitution-fines statute, on the other hand—including imposing payment without a victim and calculating payment without reference to the actual loss suffered or to be suffered—indicate that the California legislature's primary goal in enacting the restitution-fines statute was punishment of the defendant rather than compensation of the victim.

law . . . ." According to defendant, the Legislature's use of the language "*other* penalty," *id.* (emphasis added), indicates that the Legislature envisioned restitution as a penalty, which is equivalent to punishment. Defendant's argument garners some support in lay dictionaries defining "penalty" as "punishment." See, e.g., *Random House Webster's College Dictionary* (1995) (defining "penalty" as "a punishment imposed or incurred for a violation of law or rule").

But the two-step inquiry to determine whether a sanction constitutes a "punishment" under the Ex Post Facto Clauses involves more than merely looking at whether the sanction is a "penalty," and the two terms have not always been treated as equivalent. For example, both our Legislature and our courts have referred to "civil penalties" and "criminal penalties," demonstrating that the term "penalty" does not carry with it an exclusive allegiance. Compare MCL 333.26424 (referring to "civil penalty"); *People v Duranseau*, 221 Mich App 204, 206; 561 NW2d 111 (1997) (same); *People v Parker*, 275 Mich App 213, 218; 738 NW2d 257 (2007) (same), with MCL 257.204b(2) (specifically referring to "a criminal penalty"); *People v Kevorkian*, 447 Mich 436, 446; 527 NW2d 714 (1994) (opinion by CAVANAGH, C.J., and BRICKLEY and GRIFFIN, JJ.) (same). Moreover, both Michigan courts and federal courts have specifically referred to "civil penalties," rather than "civil remedies," within the context of ex post facto analyses as being the opposite category to "criminal punishment." See, e.g., *Hudson v United States*, 522 US 93, 99; 118 S Ct 488; 139 L Ed 2d 450 (1997) ("Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further . . . .") (quotation marks and citation omitted); *People v Adams*, ___ Mich App ___; ___ NW3d ___ (June 15, 2023) (Docket No. 359017); slip op at 3. Accordingly, while the word "penalty" may be used

11

colloquially in a similar manner to that of "punishment," "criminal punishment" under the Ex Post Facto Clauses is a legal concept distinct from the term "penalty." As applied here, the Legislature's characterization of restitution as a "penalty," then, is not itself dispositive of whether the Legislature intended restitution to be a civil remedy or a criminal punishment.[7]

Because the goal of the Legislature in enacting the restitution statutes was to compensate victims for the actual costs of their suffering, and because the Legislature's characterization of restitution as a "penalty" is not sufficient standing alone to find that the Legislature intended these statutes to be criminal punishment, we conclude that the Legislature intended the statutes to create a civil remedy. Having so concluded, we must

---

[7] Defendant correctly argues that this Court has previously adopted similar reasoning in *People v Cole*, 491 Mich 325, 336; 817 NW2d 497 (2012). There, this Court held that the Legislature's characterization of lifetime electronic monitoring as a "penalty"—through the similar statutory language "in addition to the penalty" and "in addition to any other penalty"—"indicates that the Legislature intended that lifetime electronic monitoring would itself be a penalty, in addition to the term of imprisonment imposed by the court." *Id*. This Court relied on that language to conclude that lifetime electronic monitoring was criminal punishment. *Id*. at 335-336. But this Court also relied on the Legislature's inclusion of lifetime electronic monitoring in the portion of the criminal sexual conduct statutes that also discussed the terms of imprisonment and fines for offenders and that the statutes specifically provided that the trial court "*shall sentence* the defendant to lifetime electronic monitoring"—factors that are not present here. *Id*. (quotation marks and citation omitted). Without these additional circumstances and given the Legislature's and the courts' indiscriminate use of the term "penalty," we are not persuaded the same reasoning applies here.

Additionally, as noted above, in *Peters*, 449 Mich at 523-526, we held that restitution serves a primary "compensatory," as opposed to "penal," purpose. There, this Court considered "whether an order of restitution should abate on the death of [the] defendant," which ultimately depended on whether the purpose of restitution was compensatory or penal. *Id*. at 523. Defendant has not explained how this Court could hold that restitution is punishment and yet remain consistent with *Peters*'s conclusion that restitution is compensatory. Nor has he argued that *Peters* should be overturned.

next determine "whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Earl*, 495 Mich at 38 (quotation marks, citation, and brackets omitted). To do so, we consider each relevant *Mendoza-Martinez* factor in turn. *Betts*, 507 Mich at 549-562.

First, we consider whether restitution has "been regarded in our history and traditions as a form of criminal punishment." *Earl*, 495 Mich at 45. Restitution "has been considered an equitable, remedial measure designed to prevent the unjust enrichment of wrongdoers," *Newman*, 144 F3d at 541, and equity "historically excludes punitive sanctions," *Liu v Securities & Exch Comm*, 591 US 71, 74; 140 S Ct 1936; 207 L Ed 2d 401 (2020). Defendant nonetheless argues that this factor supports a finding that restitution is punitive because it is analogous to criminal fines, which have been historically considered punitive. But criminal fines—even as they existed decades and centuries ago—are demonstrably different than restitution. The state, not the victim or society, is the beneficiary of criminal fines. Cf. *People v Konopka (On Remand)*, 309 Mich App 345, 372-373; 869 NW2d 651 (2015) (noting that where an imposed cost is designed to benefit "the court's operation rather than to punish convicted defendants," the imposed cost is more likely to be civil). Further, criminal fines are based on the defendant's criminal conduct, *Earl*, 495 Mich at 45, rather than the specific and actual harm suffered by the victim. These fundamental differences between criminal fines and restitution defeat defendant's attempted analogy.[8]

---

[8] Defendant argues that restitution is similar to criminal fines because restitution payments are sometimes paid to the state. See MCL 780.766(21). However, this is only true "[i]f a person or entity entitled to restitution under this section cannot be located, refuses to claim the restitution within 2 years after the date on which he or she could have claimed the

13

Second, we consider "[w]hether the sanction involves an affirmative disability or restraint[.]" *Mendoza-Martinez*, 372 US at 168. Under this factor, "we inquire how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 US at 99-100. Here, we disagree with the conclusion of the Court of Appeals[9] that the imposition of restitution involves no affirmative disability or restraint. Because restitution is required as a condition of parole or probation, the trial court or parole board may revoke a defendant's probation or parole if the defendant has failed to comply with the restitution order. MCL 780.766(11); MCL 769.1a(11). In other words, a defendant may be imprisoned as a result of his failure to comply with the restitution order—and, as we have previously recognized, "[i]mprisonment is the 'paradigmatic' affirmative restraint[.]" *Betts*, 507 Mich at 554, quoting *Smith v Doe*, 538 US 84, 100; 123 S Ct 1140; 155 L Ed 2d 164 (2003). Cf. *Risner v Ohio Dep't of Natural Resources*, 2017-Ohio-7988, ¶ 37; 98 NE3d 1104 (Ohio App, 2017) (finding that this factor did not support a holding of criminal punishment where the failure to pay restitution could result only in the revocation of a hunting license and not imprisonment). However, this punitive effect is somewhat lessened by the statutory protections offered to the defendant in such a situation. Specifically, the statutes allow the revocation of probation or parole only if "the defendant has not made a good faith effort to

restitution, or refuses to accept the restitution[.]" *Id*. Under these circumstances, the restitution is deposited in the crime victim's rights fund, and "a person or entity entitled to that restitution may claim that restitution any time by applying to the court that originally ordered and collected it." *Id*. Accordingly, any restitution payments made to the state are earmarked to serve the scheme's purpose of compensating victims and are not collected or used for other purposes.

[9] *Neilly*, unpub op at 4.

comply with the order," and directs the trial court or parole board to "consider the defendant's employment status, earning ability, and financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay" when making that revocation determination. MCL 780.766(11); MCL 769.1a(11). Accordingly, while the restitution statutes pose a potential affirmative restraint of imprisonment, they also significantly narrow the circumstances in which imprisonment may be imposed.

Beyond the threat of imprisonment, the imposition of restitution poses other restraints. The United States Supreme Court has previously held that administratively imposed financial sanctions "do not involve an 'affirmative disability or restraint,' as that term is normally understood." *Hudson*, 522 US at 104. We believe that restitution under MCL 769.1a and MCL 780.766 is distinguishable. A restitution order is considered a "lien against all property of the defendant," MCL 769.1a(13); MCL 780.766(13), and thus can inhibit a defendant's freedom to sell and acquire property until the restitution order is resolved. Restitution also may cause substantial economic disadvantage to a defendant, especially an imprisoned defendant with limited earning ability. As a result, the effects of restitution under our statutes may be felt more significantly than the administrative sanctions imposed in *Hudson*. See *Smith*, 538 US at 99-100. But any disability or restraint resulting from the imposition of restitution is generally more minor and indirect than the sanction of imprisonment. See *id*. Overall, we hold that the restitution statutes involve an affirmative disability or restraint but that the protections afforded to the defendant in the statutes and the indirect nature of the disability or restraint minimize the resultant punitive effect.

15

Third and fourth, we consider "whether [the restitution statutes] come[] into play only on a finding of *scienter*," and "whether the behavior to which [the restitution statutes] appl[y] is already a crime[.]" *Mendoza-Martinez*, 372 US at 168. Both this Court and the United States Supreme Court have found these factors "generally unhelpful," *Earl*, 495 Mich at 48, and "of little weight," *Smith*, 538 US at 105, as applied to sanctions imposed based on past criminal conduct because such sanctions always involve a crime and nearly always require a finding of scienter. The same is true here because restitution may only be ordered after a defendant has been convicted of a criminal offense. Accordingly, we similarly determine that these factors carry minimal weight in our analysis.[10]

Fifth, we consider "whether [the] operation [of the restitution statutes] will promote the traditional aims of punishment—retribution and deterrence[.]" *Id*. As defendant argues, it is possible that imposing restitution on defendants may deter future crimes as an additional negative consequence of conviction. However, "in light of the other potential consequences of criminal punishment, such as . . . fines . . . and incarceration," *Earl*, 495 Mich at 46, restitution is unlikely to have a substantial deterrent effect. Further, while restitution may appear retributive because it is an additional negative consequence for a convicted defendant, its focus—as already discussed—is alleviating the harm suffered by the victim rather than punishing the actions of the defendant. See *People v Grant*, 455 Mich 221, 230 n 10; 565 NW2d 389 (1997) ("[A] legislative enactment that requires a defendant to return victims to something resembling their precrime status contrasts with the policy factors of rehabilitation, deterrence, protection of society, and punishment, that

---

[10] Indeed, neither of the parties identified these factors as relevant to the present analysis.

are the general foundation for criminal sentences usually involving a term of imprisonment, a fine, or both."). The restitution statutes allow recovery of specific and identifiable losses, and they do not consider the severity of the defendant's crimes outside the limited perspective of what harm they caused.

Defendant identifies MCL 780.766(5) as a particularly retributive aspect of the restitution statutes. That provision allows the trial court to order "up to 3 times the amount of restitution" if the crime results in death or serious impairment of a bodily function. While this provision standing alone could fairly be viewed as punitive rather than compensatory, it is noteworthy that the award is still based on the initial calculation of harm suffered by the victim and may also be characterized as recognition that the continuing and future monetary cost of such a devasting injury is difficult to estimate. We find that, in light of the surrounding provisions explicitly tying restitution to the amount necessary to compensate the victim, this provision alone does not tip the scales toward finding restitution punitive as a general matter. Moreover, the trial court in this case did not triple the amount of restitution owed and only ordered defendant to pay restitution equal to the actual costs of the decedent's funeral arrangements. Accordingly, as with the deterrent effect of the restitution statutes, we conclude that the retributive effect of the restitution statutes is also minimal.

Sixth, we consider whether the restitution statutes have "a rational connection to a nonpunitive purpose." *Betts*, 507 Mich at 558. The United States Supreme Court has described this factor as "[m]ost significant." *United States v Ursery*, 518 US 267, 290; 116 S Ct 2135; 135 L Ed 2d 549 (1996); *Smith*, 538 US at 102. As discussed, the restitution statutes' purpose is to compensate victims for the losses suffered as a result of a defendant's

17

crimes, which is a nonpunitive purpose. See *Earl*, 495 Mich at 43 (noting that the "regulatory purpose" of the CVRA, which includes MCL 780.766, is "to protect the health and safety of Michigan crime victims"); *Peters*, 449 Mich at 524 (explaining that Const 1963, art 1, § 24 and the CVRA "underscore the rights of crime victims and the compensatory nature of restitution in Michigan"); *Grant*, 455 Mich at 230 n 10. By mandating compensation, the statutes obviously have a rational connection to that purpose.

Seventh, and finally, we consider "whether [application of the restitution statutes] appears excessive in relation to the alternative purpose assigned . . . ." *Mendoza-Martinez*, 372 US at 169. We conclude that the restitution statutes are not excessive. Under these statutes, restitution orders are limited to defendants who have been convicted of a crime. MCL 780.766(2); MCL 769.1a(2). The amount of restitution is linked to the amount of provable damages suffered or expected to be suffered by a limited class of victims. MCL 780.766(1) and (3) through (8); MCL 769.1a(1)(b) and (3) through (8). The statutes also limit the type of recoverable damages to specific losses, including medical and related professional services, physical and occupational therapy and rehabilitation, after-tax income loss, psychological and medical treatment for the victim's family, and homemaking and child care costs. MCL 780.766(3) through (8); MCL 769.1a(3) through (8). Because the amount recoverable is limited to certain types of harm suffered and certain categories of victims and because the amount is tailored to the specific injury caused by the specific defendant, the restitution statutes are not applied excessively.[11]

---

[11] Defendant argues that restitution is excessive because a court is sometimes required to order restitution to third parties who are not the victims of the crime, such as insurers. See MCL 780.766(8). However, a third party's right to restitution is limited to reimbursement for compensation to a victim "for a loss incurred by the victim," or for "the costs of services

18

Additional statutory provisions ensure that the restitution statutes are not unduly severe. Although the restitution statutes no longer require a trial court to consider the defendant's ability to pay when determining the restitution amount, the defendant's ability to pay *is* considered when deciding whether a defendant's probation or parole should be revoked because of a failure to pay. MCL 780.766(11); MCL 769.1a(11). The restitution statutes also allow a defendant to repay restitution in the form of services, if the victim consents, providing the defendant greater flexibility in resolving the restitution order. MCL 780.766(6); MCL 769.1a(6). The statutes also allow the defendant to petition the trial court to modify the method of payment in cases of undue hardship. MCL 780.766(12); MCL 769.1a(12).

As the United States Supreme Court has remarked, the *Mendoza-Martinez* factors "may often point in differing directions"—as they do to some extent here. *Mendoza-Martinez*, 372 US at 169. However, the Legislature's intent that the restitution statutes create a civil remedy rather than a criminal punishment can only be overcome by "the clearest proof" of the punitive effect of the statutes, as shown through the *Mendoza-Martinez* factors. *Hendricks*, 521 US at 361 (quotation marks and citation omitted). Here, although the restitution statutes impose some affirmative disability and are connected to criminal activity, a majority of the *Mendoza-Martinez* factors support a conclusion that the punitive effect of the restitution statutes is minimal. Accordingly, the aggregate punitive effects of the restitution statutes do not negate the state's intention to deem it a civil remedy.

provided . . . to the victim as a result of the crime." *Id*. Ordering restitution for third parties in these circumstances reasonably serves the statute's compensatory purpose by encouraging more prompt and complete compensation for victims.

Restitution imposed under MCL 780.766 and MCL 769.1a is not criminal punishment, and so its imposition on defendant does not violate constitutional ex post facto protections.  See *Earl*, 495 Mich at 37.[12]

## IV.  CONCLUSION

In enacting the restitution statutes, the Legislature intended to create a civil remedy. Although the imposition of these statutes has some punitive effect, that effect is not sufficient to overcome the demonstrated legislative intent.  Accordingly, the imposition of restitution is not punishment.  Given this conclusion, the trial court's application of the current restitution statutes on defendant during resentencing does not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions because it does not constitute a retroactive increase in punishment.  See *id*.  We affirm.

> Elizabeth T. Clement
> Brian K. Zahra
> David F. Viviano
> Richard H. Bernstein
> Megan K. Cavanagh
> Elizabeth M. Welch
> Kyra H. Bolden

---

[12] We note that, even if defendant had successfully proved that the imposition of restitution under the current statutes constituted criminal punishment and that the statutory changes here increased the punishment for his offense, the proper remedy would be a remand for resentencing under the statutes in effect at the time defendant committed his crimes—not a vacation of the restitution order, as defendant argues.

20